## SIMON PETER TAYLOR v. STATE OF FLORIDA

22 So. (2nd) 639 June Term, 1945
June 29, 1945 En Banc

*Scofield & Scofield, Geo. W. Scofield, Bryan & Bryan, E. L. Bryan* and *C. W. Bryan,* and *James Whitehurst,* for appellant.

*J. Tom Watson,* Attorney General, and *Reeves Bowen,* Assistant Attorney General, for appellee.

ADAMS, J.:

Appellant was convicted of murder and sentenced to death upon an indictment reading:

"In the Name and By Authority of the State of Florida:

"In the Circuit Court of the Thirteenth Judicial Circuit of the State of Florida, in and for the County of Hillsborough,

at the Spring Term thereof, A. D. 1944, Hillsborough County, Florida, to-wit:

"The grand jurors of the State of Florida, empaneled and sworn to inquire and true presentation make, in and for the body of the County of Hillsborough, upon their oaths do present that Simon Peter Taylor, on the 2nd day of September, A. D. 1944, in the County and State aforesaid, unlawfully and from a premeditated design to effect the death of Robert Max Suarez, did inflict mortal wounds upon the said Robert Max Suarez, by stabbing him with a knife and shooting him with a pistol, from which mortal wounds the said Robert Max Suarez did languish and die on the 3rd day of September, 1944, contrary to the form of the statute in such case made and provided, to the evil example of all persons in like case offending and against the peace and dignity of the State of Florida. *(signed)* J. Rex Farrior

J. Rex Farrior, as State Attorney, 13th Judicial Circuit of the State of Florida. Prosecuting for said State."

On this appeal he questions the sufficiency of the indictment as well as the legality of his trial. We have quoted the indictment because we regard it as a model of brevity and perfection. It is in line with the opinions of this Court in Reed v. State, 94 Fla. 32, 45, 113 So. 630, 635, and Pell v. State, 97 Fla. 650, 122 So. 110. See also Section 923.03(a) F.S. 1941.

After a study of the record and briefs we are constrained to limit our comment to the question of whether the evidence is sufficient to show a premeditated design. On this question we rest our consideration largely upon the state's evidence.

State's witness, Bass, met deceased, who was a deputy sheriff, at or near appellant's shop for the purpose of having deceased serve a writ of replevin against appellant in a suit wherein Bass was plaintiff. Bass testified as to what occurred between them, including appellant's wife, Katherine.

"Katherine refused to take her copy of the writ. Simon took his and he threw it down on the street and he told the deputy sheriff that . . ."

"He said that he did not want anyone to take that furniture; that the sheriff was not with him when he bought it and the sheriff did not have to come and get it. Deputy Suarez asked him to get in the car and go with him around to the house and get the furniture to put it in storage for a few weeks, but they refused to do that, so, when they declined Deputy Suarez and I went back around to the corner where I had met Deputy Suarez to pick up my car, and while we were standing there Katherine came over and in a few minutes Simon came home." . . .

"While we were standing there at the corner, and then, Mr. Suarez asked me to wait where I was at the corner there, and that he would talk to Simon and try to make arrangements with him about getting the furniture and putting it in storage for a few weeks." . . .

"I sat down on the curb and waited for Mr. Suarez to take his car, back around his car, like, across Willow, facing Willow, and he called for Simon Taylor across the Street. He was coming down the sidewalk, and he called him over to the car." . . .

"They were talking, and in a few minutes the defendant started away from the car and walked towards his house, and Mr. Suarez called him back, and he stopped, and Mr. Suarez got out of the car and started to cross the street towards Simon and walked up to him, and thereupon Simon began to fight with him and stabbed him in the face and on the head." . . .

The following dying declaration was received in evidence:

"He told me he got out of the car and walked over to the nigger and started to read him the papers, and he turned and walked off from him, and he wanted to get hold of him and when he went to get hold of him he came at him with a knife, and that is the last he ever told me of it. That was as far as he got."

In the altercation that followed, deceased was cut a number of times and appellant was shot by deceased through the arm. Appellant took deceased's pistol and fired two shots into deceased, one of which was fatal. It does not conclusively appear that deceased was actually in the act of exe-

cuting any writ upon appellant at the time the difficulty occurred inasmuch as Mr. Bass testified that the writ had been read and a copy delivered at the shop and the deputy was not, according to his dying declaration, in the act of further executing the writ by seizing the property or otherwise performing his official duty. Neither does it appear that the officer had legal reason to lay hands on appellant. In short, the state's contention is that appellant used an excess amount of self-defense; that he could have withdrawn from the field of combat without firing the fatal shot. These are factual questions for the jury to consider in the light of the relative position of the actors, together with their state of mind under the stress of excitement. In this case the deceased was a white man and appellant a colored man. As to the relative rights and duties, the law makes no distinction. When the two clash in combat it is usually violent. The method and degree of force employed in a self-defense is a question of fact, but like all other findings of fact they are subject to judicial review. If not supported by law, they must, necessarily, be set aside.

In the light of the entire record we are driven to the conclusion that the essential element of premeditation was absent, hence there could be no finding of murder in the first degree. We are satisfied that the homicide was unlawful; that the evidence was sufficient to justify a conviction of murder in the second degree; therefore, pursuant to Sec. 924.34, F.S. '41, F.S.A., we reverse the judgment with directions to adjudge the appellant guilty of murder in the second degree and sentence him accordingly.

Reversed.

CHAPMAN, C. J., TERRELL, BROWN, BUFORD and SEBRING, JJ., concur.

THOMAS, J., dissents.

THOMAS, J., dissenting:

I dissent because of my view that the evidence substantiates the judgment of murder in the first degree.