379 So.2d 974 (1979)
Charles Wilbur MARCUM, Vincent Paul O'Connor, James Joseph O'Brien, a/K/a James Joseph Garcia, Appellants,
v.
The STATE of Florida, Appellee.
Nos. EE-246/NT1-1, EE-322/NT1-1A and EE-323/NT1-1B.
District Court of Appeal of Florida, Fifth District.
December 27, 1979.
Rehearing Denied February 18, 1980.
Michael J. Minerva, Public Defender, and Janice G. Scott, Asst. Public Defender, for appellants.
Robert L. Shevin, Atty. Gen., Wallace E. Allbritton, Asst. Atty. Gen., John Watson, III, Asst. State's Atty., for appellee.
BOOTH, Associate Judge.
These cases are before us on appeals from judgments of conviction and sentences imposed in the Circuit Court, Volusia County.
*975 Appellants were jointly charged in eight counts with the first degree murder of a cofelon, Walter Carl Splitt; burglary of the residence of William Green; conspiracy to commit that burglary, or kidnapping, or murder, or robbery; attempted murder of William Green; aggravated assault on James and Betty Daunt; use of a firearm in the commission of a felony; and possession of a firearm by a convicted felon. All charges arose from acts of appellants on February 13, 1976, at or near the residence of William Green and his family. After trial by jury, each defendant was found guilty on all counts except that Marcum was acquitted of possession of a firearm by a convicted felon. The jury recommended a sentence of life imprisonment for first degree murder, and all three defendants were adjudged guilty of first degree murder and burglary and sentenced to consecutive terms of life imprisonment for each of those offenses; adjudged guilty of conspiracy and sentenced to 15 years; adjudged guilty of attempted murder and sentenced to 30 years consecutively; adjudged guilty of two counts of aggravated assault and sentenced to five years consecutively for each count. O'Connor and O'Brien were each adjudged guilty of possession of a firearm by a convicted felon and sentenced to 15 years.
On appeal to this Court numerous points are raised. We find merit only in the issue which raises the application of Florida Statute, Section 782.04, the Felony-Murder Rule. Appellants rely on the decision of the Second District Court of Appeal in Wright v. State, 344 So.2d 1334 (Fla. 2nd DCA 1977), which set aside a conviction of second degree felony-murder where a cofelon was killed by a policeman during the commission of the felony. Subsequent to the oral argument in this case, that decision was reversed by the Florida Supreme Court in State v. Wright, 379 So.2d 96 (Fla. 1979), wherein the Court held:
"The question involved is whether a surviving co-perpetrator of a robbery is guilty of felony murder in the second degree when a policeman shoots and kills another co-perpetrator during the perpetration of the robbery. We answer in the affirmative.
"The defendant, a person named McRae, and a person named Robertson were involved in the robbery of a store. Defendant and McRae committed the robbery while Robertson waited in the automobile. As they were attempting to leave after the robbery, the police intercepted the trio and a gun battle resulted. The defendant and Robertson were apprehended, but Robertson was fatally wounded by a bullet originating from the gun of one of the policemen."
The Supreme Court, citing his prior decision in Mikenas v. State, 367 So.2d 606 (Fla. 1978), held that the statute was not limited in application to "innocent" persons killed by one perpetrating or attempting to perpetrate a felony.
In the instant case, the facts are that cofelon, Splitt, was shot and killed by Walter Green, a victim of the robbery and attempted murder which was being perpetrated by Splitt and the three appellants. These facts are substantially similar to those in the Wright case and the Mikenas case wherein the cofelon was killed by an officer of the law and convictions of second degree felony-murder upheld. Therefore, under Section 782.04(3), second degree murder is the highest degree of homicide with which the defendants can be convicted.
Marcum and O'Connor contend that they cannot be convicted of any degree of felony-murder because they were not personally present at the scene when the killing occurred, as required under the holding of Hite v. State, 364 So.2d 771 (Fla. 2nd DCA 1978); certiorari denied, 372 So.2d 471 (Fla. 1979).
In the Hite case, the appellant was one of three who conspired to commit a robbery. She and another codefendant dropped the third codefendant off near the food market to be robbed and waited at a tavern half a mile away. During the course of the robbery, defendant's cofelon shot and killed the proprietor of the store. The Court ruled that, in order to be guilty of either first degree or second degree felony murder under *976 the 1974 version of the statute (Chapter 74-384, Section 14, Laws of Florida, effective July 1, 1975), a defendant must be personally present at the commission of the underlying felony. The Hite case further holds that, since the killing was by a cofelon, rather than an innocent party, there could be no conviction of second degree felony-murder.[1]
In the Hite case, the evidence was clear that defendant Hite was not personally present at the scene of the robbery when the killing occurred. Assuming, without deciding, that the Hite case is correct and personal presence is required for conviction of any degree of felony-murder, here there is evidence that Marcum and O'Connor were present at the scene.
Two of the cofelons, O'Brien and Splitt, were known to have been inside the Green residence carrying out their planned crime. Splitt was killed in the residence. O'Brien was identified as the man who took Mr. Green's gun after Green had shot Splitt, left the Green residence and ran toward Mrs. Green as she was going toward a neighbor's house and then attempted to commandeer the vehicle occupied by the Daunt family, which was passing the Green residence. O'Brien was further identified as the individual who, after being unsuccessful in starting the Daunt vehicle, ran away in an easterly direction and was subsequently apprehended on foot some three miles away from the Green residence. Meanwhile, Officer Grigsby, who had responded to the initial call, saw a late model Cadillac, two door, white over blue, with an 8WW tag, sitting on the median strip of Plaza Drive, a street one block (three-tenths of a mile via streets) from the Green residence. The vehicle was apparently unoccupied. Grigsby testified that he returned a short time later and the Cadillac was gone. It was Marcum who, several days after the shooting, took Splitt's widow to where the car was; at a motel parking lot near Marcum's residence. This car was identified as being in all respects similar to the one seen by Grigsby on the median strip near the Green residence.
Further testimony supporting the presence of O'Connor and Marcum at the scene of the crime was that of Jerome Raddick, who had been offered a chance to participate in the Green job. On the evening of the crime, Raddick saw Marcum and O'Connor leave the Bullpen Bar with Walter Splitt and he saw guns, hand grenades, plastic explosives and masks in the trunk of one of the vehicles being driven by the three men. Raddick first observed the three men in the Bullpen Bar between 5:30 and 6:00 on the evening of February 13 and thereafter observed Marcum and O'Connor return and leave on four separate occasions, remaining each time some twenty to thirty minutes in the bar. Raddick testified that the last time Marcum and O'Connor returned to the bar was between 9:30 and 10:00. At that time they told Raddick their partner had messed up the job and had been killed. The shooting at the Green residence occurred at 9:23. Only those immediately present in the house or grounds would know of the shooting and that death ensued so as to report that information by 9:30 or 10:00.
Those present at the scene as lookouts, or to assist in restraining or abducting the victims, or to assist in the escape are perpetrators of the underlying felony and present at the homicide. The rule as to presence is stated in 40 C.J.S. Homicide Section 9 at page 847, as follows:

*977 "Where several persons join in a common, unlawful design, and each takes the part assigned to him, some to commit the act, others to watch to prevent a surprise and to aid an escape, they are all present at a homicide committed in the course of carrying out the common design."
Even the Hite case does not require that the homicide must be committed within the range of vision of the felons engaged in the perpetration of the underlying felony in order for the Felony-Murder Rule to apply. Here the jury could have found that the defendants O'Connor and Marcum were present at the scene. Their prompt and accurate knowledge not only of the shooting but of the death of their partner strongly supports that finding.
There was evidence that the crime against the Green family had been well planned; that both the residence and the jewelry store owned by Mr. Green had been "cased" by several of the felons disguised as customers, meter readers, etc., that there had been some unusual phone calls which had prompted Mr. Green to purchase the pistol which he was carrying on the night of the crime; and that the entire Green job was to include an abduction and robbery of the jewelry store. The weapons to be used included hand grenades and plastic explosives, as well as automatic weapons. A hand grenade and plastic handcuffs were found on the deceased felon. Taking all these facts into consideration, the jury was clearly entitled to find that the crime, as planned and participated in by all defendants, contemplated the expendability of the victims as well as a high degree of risk to those committing the crime.[2] These are the factual circumstances which have traditionally formed the basis for the Felony-Murder Rule, and its application in the instant case to O'Connor and Marcum, as well as to O'Brien was proper.
Accordingly, pursuant to Florida Statute, Section 924.34, the judgments of conviction of murder in the first degree are reversed; and the cause remanded to the trial court to enter judgments for murder in the second degree as to all defendants, and to pass sentence accordingly. Douglas v. State, 10 So.2d 731 (Fla. 1942); Raynor v. State, 341 So.2d 998 (Fla. 4th DCA 1976).
McCORD and SMITH, Associate Judges, concur.

ON REHEARING
On rehearing, appellants contend that the jury was not properly instructed as to second degree felony-murder under the rule of Hite v. State, 364 So.2d 771 (Fla. 2nd DCA 1978), and that the error, though not objected to, was fundamental, requiring reversal. We have reviewed the entire charge given by the court, including the second degree felony-murder charge set out at footnote two of the original opinion, and find that it was sufficient and without error of any fundamental extent.
The jury returned verdicts of guilty of murder in the first degree, which verdicts cannot stand for the reasons stated in the original opinion. However, our review of the record shows evidence sufficient to support a conviction of the lesser degree of homicide, to-wit, murder in the second degree, and we have ordered judgment entered for that offense pursuant to Florida Statutes, § 924.34. Under that statute, the appellate court, after setting aside a verdict of murder in the first degree as unsupported by the evidence, may enter judgment for second degree murder where that offense is supported by the evidence. Taylor *978 v. State, 22 So.2d 639 (Fla. 1945), and Hines v. State, 227 So.2d 334 (Fla. 1st DCA 1969).
Accordingly, petition for rehearing is DENIED.
McCORD, BOOTH and LARRY G. SMITH, JJ., concur.
NOTES
[1] Hite v. State, 364 So.2d 771, 773 (Fla. 2nd DCA 1978):

"[T]he clause [of Section 782.04(3), as amended 1974] `the person perpetrating or attempting to perpetrate such felony shall be guilty of murder in the second degree' restricted liability for second degree felony-murder to those principals, aiders or abetters who are personally present at the commission of the felony.
* * * * * *
"In summary then, we hold that for a person to be guilty of second degree felony-murder, he must have been personally present at the commission of one of the enumerated violent felonies and the killing must have been committed by someone other than him or one of his cofelons. Thus appellant was also not guilty of second degree felony-murder because a cofelon shot the victim and because appellant was not personally present at the robbery."
[2] The trial court's charge to the jury on second degree felony-murder was not objected to below, and is not at issue here. That charge was as follows:

"When a killing occurs in the perpetration of or in the attempt to perpetrate any robbery, burglary, kidnapping or the unlawful throwing, placing or discharging of a destructive device or bomb, but actual killing is by a person other than the person engaged in the perpetration of or the attempt to perpetrate such felony, the person perpetrating or attempting to perpetrate such felony shall be guilty of murder in the second degree.
"Such a killing is not murder in the second degree unless it occurs as a natural and reasonably foreseeable result of the perpetration or attempt to perpetrate such crime."