James J. O'BRIEN, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, et al.,
Respondents-Appellees.

No. 82–5961.

United States Court of Appeals,
Eleventh Circuit.

Aug. 9, 1984.

Seneca B. Anderson (court-appointed), Tallahassee, Fla., for appellant.

Wallace E. Allbritton, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for appellee.

Before RONEY, FAY and CLARK, Circuit Judges.

RONEY, Circuit Judge:

James O'Brien filed a petition for habeas corpus relief challenging his Florida conviction for first degree murder, burglary, attempted murder, conspiracy, aggravated assault, and use of a firearm in the commission of a felony. O'Brien contends: (1) that an in-court identification was based on an irreparably suggestive pretrial photographic identification and preliminary hearing that violated his due process rights; (2) evidence of his refusal to appear in a lineup violated his right against self-incrimination; and (3) admission of evidence found in an illegal search and seizure violated his Fourth Amendment rights. We affirm, holding that although the photographic lineup was impermissibly suggestive, it did not unconstitutionally taint the in-court identification, evidence of the refusal to appear in a lineup does not violate the Constitution, and *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976),

forecloses the consideration of the search and seizure claim.

All of the charges against O'Brien arose out of a burglary of a residence in which one person was killed and another seriously wounded. O'Brien was arrested one hour after the burglary because he fit the description given by several eyewitnesses. William Green, the victim of the burglary, picked O'Brien out of a photographic lineup and made an in-person identification at a preliminary hearing and at trial. O'Brien claims that both pretrial identifications were unduly suggestive and materially affected the in-court identification at trial.

The Supreme Court has held that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). This standard has been applied in a two-part fashion: the suggestiveness of the identification procedure is examined, and if found to be improperly suggestive, then the reliability of identification must be scrutinized. "[R]eliability is the linchpin in determining the admissibility of identification testimony..." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). In our judgment, the photographic lineup in this case was irreparably suggestive under the law of this Circuit.

The day after the killing, the police compiled a photo lineup to show to Green. All of the photographs in the lineup book were black-and-white mug shots except the picture of O'Brien, which was a color polaroid print. The police used the color print because it was the only photograph that could be obtained quickly and at the time Green was in serious condition at the hospital. Green identified O'Brien from the pho-

tographic lineup. Two weeks later at a preliminary hearing, Green reidentified the color print of O'Brien in a slightly different photo lineup. The photo array had been altered by adding additional black-and-white mug shots, including shots of O'Brien. Twice Green examined the photo lineup without noticing the black-and-white mug shots of O'Brien.

A photographic lineup similar to the one in this case was held impermissibly suggestive by the predecessor to this Court in *Passman v. Blackburn*, 652 F.2d 559, 570 (5th Cir.1981), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1722, 72 L.Ed.2d 141 (1982). There, a color photo of the defendant was displayed with eleven other black-and-white mug shots. Here, a color photo of O'Brien was displayed with five other black-and-white mug shots. Even the preliminary hearing judge noted that O'Brien's picture stuck out like a "sore thumb." *Passman* controls on the issue of suggestibility of the photographic lineup.

In addition to the polaroid picture in the lineup a conversation between Green and law enforcement officers outside the courtroom during the preliminary hearing was unduly suggestive. In his preliminary hearing testimony, Green was at first unable to identify O'Brien who had grown a beard since his arrest. While momentarily excused from the courtroom, he asked law enforcement officers if the judge would permit one of the persons he had viewed to be shaved. One of the officers told Green that the bearded man was the one the prosecutor wanted him to identify. When Green returned to the courtroom he identified O'Brien.

Thus, both of Green's pretrial identifications occurred in conjunction with unduly suggestive procedures. The next inquiry must be whether these suggestive influences rendered Green's in-court identification unreliable.

■ The Supreme Court has listed five factors which are important in evaluating the reliability of an identification obtained by a suggestive procedure. They are (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. These factors must be weighed against the corrupting effect of the suggestive identification. *Manson v. Braithwaite*, 432 U.S. at 114–17, 97 S.Ct. at 2253–54; *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972).

■ To apply this analysis, the facts surrounding the burglary and the pretrial identifications must be set out in detail. Upon returning home on the night of February 13, 1976, Green and his family discovered burglars in the house. William Green exchanged handgun fire with the burglars. Although Green's wife and child were able to flee, Green was seriously wounded. One of the burglars was shot dead. Fearing he had exhausted his ammunition, Green threw down his weapon at the command of the surviving burglar. As Green lay prone on the floor, he observed the burglar step out of a dark hallway and walk across a well-lighted room and pick up the gun. Green got a full-face view of the intruder. The burglar then ran out of the house. Green dragged himself out to the garage and cried for help. Several minutes later he heard someone reenter the house for about a minute and then leave.

Cast in terms of the *Simmons* factors, the facts appear to be as follows:

*The opportunity to view:* Although Green only observed the burglar for a matter of seconds, Green had a closeup view of the front and side of the burglar's face in a well-lighted room.

*The degree of attention:* With his life in jeopardy, Green focused his attention solely on the actions of the burglar.

*The accuracy of the description:* Green initially described the burglar as being a white male with curly hair and a stocky build. This description matches O'Brien.

*The witness' level of certainty:* Green displayed certainty each time he identified O'Brien except at the preliminary hearing. Green claimed to have been confused at the preliminary hearing by the beard that O'Brien had grown.

*The time between the crime and the confrontation:* The time lapse between the crime and Green's review of the photographic lineups at the hospital was less than one day. The preliminary hearing was held approximately two weeks after the crime. The trial occurred a little more than six months after the crime.

As a sign of the corruptive effect of the photographic lineup, O'Brien argues there are inconsistencies in Green's statements at the scene of the crime and at the preliminary hearing. O'Brien emphasizes that Green never mentioned that the burglar was wearing a T-shirt and had tattoos prior to the preliminary hearing. O'Brien claims this more detailed description conflicts with Mrs. Green's testimony that the burglar was wearing a dark jacket the first time he ran from the house. From this, O'Brien concludes that Green learned of the tattoos from the photographic lineup.

There appears to be some question as to whether O'Brien's tattoos were visible in the color print as it was displayed in the lineup book. At oral argument, O'Brien's counsel produced the original photograph. O'Brien's tattoos are visible in that picture. Viewing the photograph after removal from the lineup book, however, may be misleading. A copy of the lineup book as it appeared at the time of the preliminary hearing is in the record on appeal. Green testified at the preliminary hearing that the book was the same as when he had seen it earlier. O'Brien's arms and his tattoos are not visible in the picture in the book. The police detective who prepared the lineup book testified at the preliminary hearing that he partially covered O'Brien's picture so only the face would show.

In any event, our examination of the record reveals no inconsistencies in Green's testimony. First, that Green left out several details in his initial description of the burglar is not surprising given his physical condition. Second, Mrs. Green's testimony about the dark jacket is not necessarily inconsistent with her husband's testimony. Green testified he looked away as the burglar left the house. The burglar could have easily slipped on a jacket between that time and when Mrs. Green first sighted him if indeed he was wearing a jacket at that point. Mrs. Green's testimony is less than compelling. At the preliminary hearing she testified that she saw the burglar twice. She first caught a glimpse of him running behind her as she was fleeing across an unlighted yard to a neighbor's house. Later she observed the burglar for a longer period as he attempted to commandeer a passing automobile. Other witnesses confirmed that at this time the burglar had on a dark jacket. At trial, Mrs. Green could not remember if the burglar was wearing a dark jacket the first time she saw him. At no point could Mrs. Green identify the person she had seen.

The corruptive effect of the advice given Green by law enforcement officers at the preliminary hearing was little. It was Green who brought up his suspicions about the bearded man. The officers acted wrongly but their actions do not make Green's subsequent identification unreliable. That Green had difficulty identifying O'Brien at the preliminary hearing, does not render his in-court identification unconstitutional. This issue was well presented on appeal after thorough analysis by a careful court-appointed attorney. When the totality of the circumstances are considered, however, the district court could find that the facts surrounding Green's observation of the burglar outweigh the suggestive influences of the photographic lineup and the law enforcement prompting. To the extent the Government had the burden of proof on this issue, that burden was met. Green had a clear view of the burglar. He never identified anyone but O'Brien. His identifications were made with certainty except when O'Brien had disguised himself with a beard. Green's identification of O'Brien was reliable.

There was not a substantial likelihood of misidentification. The evidence raised by O'Brien in this habeas corpus petition which tends to weaken the probative value of Green's in-court identification was "grist for the jury mill." *Manson v. Brathwaite,* 432 U.S. at 116, 97 S.Ct. at 2254. In fact, Green was skillfully cross-examined at trial on the suggestiveness of the photographic lineup and the conversation with law enforcement officers at the preliminary hearing. "Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." 432 U.S. at 116, 97 S.Ct. at 2254.

■■■ O'Brien argues that the state trial court erred in allowing the prosecution to elicit from a defense witness that O'Brien refused to appear in a lineup. After his refusal the state sought a court order requiring O'Brien to appear in a lineup, but the court denied the request mistakenly relying on O'Brien's Fifth Amendment right against self-incrimination. The Fifth Amendment is not implicated by appearance in a lineup. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). We need not decide whether the state could submit evidence of a refusal to appear in a lineup after such a trial court decision, even if wrong. Here the refusal put in evidence came before the trial court's ruling. Testimony concerning refusal of a defendant to participate in a lineup is highly probative of guilt. Habeas corpus relief will be granted for evidentiary errors only when the error constitutes a "denial of 'fundamental fairness'". *Bryson v. State,* 634 F.2d 862, 864–65 (5th Cir. Unit B 1981). No error was constitutionally committed in the admission of evidence, and no fundamental unfairness occurred.

■■■ O'Brien had a full and fair hearing in state court on his claim that certain evidence was seized from him in violation of the Fourth Amendment. *Marcum v. State,* 379 So.2d 974 (Fla.Dist.Ct.App.1979). It cannot be grounds for habeas corpus relief. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

AFFIRMED.