Carol Lacey Hull was convicted of first degree robbery and was sentenced as a habitual offender to life imprisonment without possibility of parole. On appeal, she contends that the in-court identification by an eyewitness should have been excluded *Page 1203 
because that identification was the product of an unduly suggestive photographic array displayed to the witness prior to trial and had no independent basis of reliability.
 FACTS
Shortly before 2:00 p.m. on Sunday, February 1, 1987, a lone male entered Stacey's Drugstore in Bay Minette and robbed the pharmacist at gunpoint of various drugs. The robber left the drugstore, locking the door from the outside with keys he had taken from the pharmacist, then crossed the street to a bank parking lot, where a female driving a white automobile was waiting. Once the robber entered the vehicle, the white car was driven away from the scene. The only evidence connecting the defendant with this crime is the testimony of Becky Ryan, who identified the defendant as the driver of the get-away car.
Ryan testified that on the afternoon of the robbery she was driving around the courthouse square in Bay Minette when she met a white automobile proceeding the wrong way on the one-way street. Ryan, who had her two small children with her, stopped her car and waited while the driver of the white vehicle made a U-turn in front of her. In making this U-turn, the white car came within approximately two feet of the front of Ryan's vehicle. When asked if she "g[o]t a good look or a look at [the driver's] face," Ryan answered affirmatively. After the driver of the white car made a U-turn, she parked in the drive-through lane of a bank across the street from the drugstore.
Ryan was proceeding slowly down the courthouse square when she observed a man with a brown paper bag under his arm exit the drugstore and cross the street. When the man reached the bank, he began to run. He ran to the white car and jumped in, and the car pulled off before he had closed the door. Ryan testified that she "knew something was up," so she followed the white car in an attempt to obtain its complete tag number. The driver of the white car eventually eluded her by driving through a stop light, and Ryan then went to the police station, where she reported what she had seen.
The officer in charge of the robbery investigation, Kenneth Hall, confirmed at the suppression hearing that Ryan had given a "multi-page, detailed statement" shortly after the robbery. However, Officer Hall related Ryan's description of the driver of the white car only as "a white female, blond headed." Also at the suppression hearing, Officer Hall testified that Ryan was unable to provide the entire tag number of the white vehicle and that she was hypnotized shortly after the robbery in an effort to obtain a complete tag number. While under hypnosis, Ryan described the driver of the white car as a "plain white female, blond hair, no make-up . . . around thirty-five to forty years old or maybe older and approximately a hundred and thirty to a hundred and forty pounds." She also stated that the driver was wearing a "button-down blouse" and gave the color of this blouse. Earlier in his testimony, Officer Hall had indicated that Ryan's description of the driver while under hypnosis was the same as the description that she had given immediately after the robbery. Officer Hall also testified that Ryan viewed a line-up approximately two weeks after the robbery and did not identify anyone. The defendant was not a participant in this line-up.
Almost a year after the robbery, Officer Hall received from the Montgomery Police Department information which implicated the defendant in the Stacey's Drugstore robbery. He prepared a photographic spread composed of four color photographs and one black and white photograph, all of which were frontal views of the subjects.[1] The black and white photograph was a *Page 1204 
photograph of the defendant. Hall testified that he showed these photographs to Ryan, who identified the defendant as the driver of the white car. This spread contained the only photographs that Hall showed to Ryan and, as far as he was aware, these photographs were the only photographs that Ryan had been shown.
Some 51 weeks after the robbery, Officer Hall assisted Mobile police officers in arresting William Holland, the alleged gunman. The arrest occurred at Holland's residence and was covered by a local television station. Shortly before the officers effectuated the arrest, the defendant was observed leaving Holland's residence in the company of a third person. She and this third person were apprehended approximately two blocks from Holland's residence. A white car fitting the description of the get-away car used in the instant robbery was found at Holland's residence, and it was registered in Holland's name.
Officer Hall testified at the suppression hearing that, several days after the arrest, he was in a flower shop operated by Ryan's mother-in-law, who related to him that Ryan had watched the television coverage of the arrest of Holland and the defendant and "had I.D.'d the woman from the T.V. as being the subject from the car." He further testified at trial that "the photo spread and the arrest was near about imminent, one after the other. It was approximately fifty-one weeks later." It appears that the photographic identification by Ryan occurred before the televised arrest.
Ryan's testimony as to the pre-trial identification process differed profoundly from Officer Hall's. She stated that she was shown between eight and ten photographic spreads by three different officers. According to Ryan, she was first shown a single photograph approximately a week after the robbery, and definitely ruled out the subject of this photograph as the driver of the white car. She stated that a week and a half to two weeks after the robbery, Officer Hall showed her a spread of black and white photographs from which she identified the defendant's photograph. These photographs were frontal views of the subjects. Shortly thereafter, she was shown a spread of profile views and she again identified a picture of the defendant. Ryan was then permitted to make an in-court identification of the defendant as the driver of the white car. On cross-examination, Ryan stated that she was not at any time shown a spread consisting of "one colored [photograph] and four black and whites or anything like that."
 DISCUSSION
"[W]hether eyewitness identification evidence which ensues from a pre-trial identification procedure is constitutionally infirm requires a two-step inquiry. First, it must be determined whether the pre-trial identification procedures were unduly suggestive. . . . If so, then the suggestiveness of the identification procedures must be balanced against factors indicating that the in-court identification was independently reliable." Dickerson v. Fogg, 692 F.2d 238, 244 (2d Cir. 1982). As the trial judge in this case recognized, the photographic spread containing a black and white photograph of the defendant and color photographs of four other subjects was "impermissibly suggestive." O'Brien v. Wainwright, 738 F.2d 1139, 1140-41
(11th Cir. 1984), cert. denied, 469 U.S. 1162, 105 S.Ct. 918,83 L.Ed.2d 931 (1985) (photographic line-up composed of a color photograph of the defendant and black and white photographs of five other subjects held "irreparably suggestive"); Passman v.Blackburn, 652 F.2d 559, 570 (5th Cir. 1981), cert. denied,455 U.S. 1022, 102 S.Ct. 1722, 72 L.Ed.2d 141 (1982) (photographic line-up composed of a color photograph of the defendant and black and white photographs of eleven other subjects held "impermissibly suggestive"). See also United States v. Ayendes,541 F.2d 601, 605 (6th Cir. 1976), cert. denied, 429 U.S. 1063,97 S.Ct. 789, 50 L.Ed.2d 779 (1977) ("It is clear that the procedure of using a display composed of three typical black and white mug shots, a single color picture of each of the defendants with no police information similar to that on the mug shots and a color group photo in which both of the defendants appeared was suggestive"); Styers v. Smith, *Page 1205 659 F.2d 293, 297 (2nd Cir. 1981) ("The dramatic difference between the color shots and the black and white mug shots, combined with the officer's implication that [the witness] was expected to choose a couple of photos, was highly suggestive").
Having found that the pre-trial identification procedure was impermissibly suggestive, we must now determine whether Ryan's in-court identification of the defendant was independently reliable. In Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375,382, 34 L.Ed.2d 401 (1972) the United States Supreme Court set out certain factors to be considered in evaluating the reliability of an identification. These factors, as reaffirmed in Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253,53 L.Ed.2d 140 (1977), include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." These factors " 'must be weighed against the effect of the suggestive procedure to determine whether the identification is so unreliable as to create a substantial likelihood of misidentification.' " United States v. Tyler,714 F.2d 664, 667 (6th Cir. 1983) (quoting Summitt v.Bordenkircher, 608 F.2d 247, 251 (6th Cir. 1979). Each case must be decided upon its own facts, O'Brien v. Wainwright,738 F.2d at 1140, and upon a consideration of the totality of the circumstances involved, see Manson v. Brathwaite,432 U.S. at 110, 97 S.Ct. at 2251. We now apply these principles to the case at bar:
The opportunity to view. Ryan viewed the driver of the white car in full daylight as that driver made a U-turn directly in front of her. While Ryan did not testify as to the length of time she observed the driver of the white car, it does not appear to have been more than a matter of seconds.
The degree of attention. The driver of the white car was driving the wrong way on a one-way street and was driving toward Ryan, who had stopped her own vehicle. Ryan did not testify as to her degree of attention.
The accuracy of the prior description. Ryan had previously given a fairly detailed description of the driver of the white car. This description included the driver's race, sex, hair color, approximate age and weight, and one item of clothing worn by the driver.
This description, as testified to by Officer Hall, was obtained while Ryan was under hypnosis. However, the defendant has not contested the identification by Ryan on the grounds that she was hypnotized. Compare Chamblee v. State,527 So.2d 173, 174 (Ala.Cr.App. 1988) (appellant argued that rape victim's in-court identification was rendered unreliable by suggestive hypnosis techniques). We do note that Ryan was not
shown any photographs while under hypnosis. Compare Williams v.Armontrout, 877 F.2d 1376 (8th Cir. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 1140, 107 L.Ed.2d 1044 (1990) (in-court identification erroneously admitted where witness was shown a photograph of the defendant while under hypnosis). Also, Officer Hall indicated that the description given under hypnosis was the same description as that given by Ryan after the robbery. See Johnson v. State, 500 So.2d 69, 75
(Ala.Cr.App. 1986) (noting that victim "provided the police with a good description of her attacker" prior to being hypnotized). Furthermore, there does not appear to have been any suggestion made to Ryan while she was under hypnosis that would have altered her original description. Officer Hall stated that the hypnotist was unfamiliar with the details of the crime and, although permitting Officer Hall to remain in the room during the hypnosis session, required him to "sit to one side and say nothing and do nothing" while Ryan was under hypnosis. Officer Hall also testified that the question which elicited the description of the driver of the white car was " 'Can you give me a description of the person driving that vehicle,' [or] some question like that."
The witness's level of certainty. There is nothing in the record to indicate the certainty with which Ryan identified the *Page 1206 
defendant's photograph. Both Ryan and Officer Hall testified simply that Ryan identified the photograph. However, Ryan never identified anyone else as the driver of the white car. Officer Hall testified that when Ryan viewed a line-up in which the defendant was not present she did not identify anyone. Ryan testified that she viewed a line-up and eight to ten photographic spreads, but only identified photographs of the defendant.
The time between the crime and the identification. The evidence was in conflict as to the time lapse between the crime and the initial identification. Officer Hall testified that this period was 51 weeks, while Ryan testified that it was a week and a half to two weeks. The trial occurred over 34 months after the crime.
All in all, the evidence which we must consider in determining whether Ryan's in-court identification was independently reliable is clearly conflicting. Ryan observed the driver in the white car in daylight, but only for a matter of seconds. While the short time Ryan had to view the driver of the white car does not necessarily weigh against the reliability of her identification, see O'Brien v. Wainwright,738 F.2d at 1141 (identification reliable although victim "only observed the burglar for a matter of seconds"); Ball v. State,522 So.2d 793, 795-96 (Ala.Cr.App. 1988) (identification reliable although eyewitness viewed defendant from a distance of 10 feet only for approximately 15 seconds), Ryan was clearly not the victim in this case and there was no testimony that her attention was fixed on the driver for this entire time or that she was trained in any way to observe individuals, compareManson v. Brathwaite, 432 U.S. at 115, 97 S.Ct. at 2253
(witness was a trained police officer who concentrated on remembering defendant's appearance while engaging in drug transaction with defendant). We observe both that Ryan included in her description the fact that the driver of the white car was wearing a blouse with a button-down collar, which indicates a fair degree of attention on Ryan's part, and that Ryan was operating her own vehicle and was accompanied by her two small children, which tends to negate her ability to give the other driver her undivided attention.
Ryan did give a fairly detailed, although somewhat general, description of the driver of the white car shortly after the robbery. The defendant has not contested the accuracy of this description, but maintains that it is too general to be an indication of reliability. However, Ryan's prior description is no more general than descriptions given in other cases where the identification was held reliable. See Neil v. Biggers,409 U.S. at 194, 93 S.Ct. at 380 (victim's initial description of rapist was " 'fat and flabby with smooth skin, bushy hair and a youthful voice' . . . between 16 and 18 years old and between five feet ten inches and six feet tall, . . . weighing between 180 and 200 pounds, and . . . having a dark brown complexion");O'Brien v. Wainwright, 738 F.2d at 1141 (victim's initial description of burglar was "a white male with curly hair and a stocky build").
There was no testimony as to the certainty of Ryan's identification of the defendant. She had not made a previous identification of someone other than the defendant and that fact lends support to a finding of reliability. See Neil v.Biggers, 409 U.S. at 201, 93 S.Ct. at 383. However, Ryan did not testify that her in-court identification of the defendant was based on her observation of the defendant on the day of the robbery. Compare United States v. Ayendes, 541 F.2d at 605 (the eyewitnesses testified "that their identifications were based solely on their recollections of the bank robbery and were in no way influenced by" the suggestive photographic line-up);Hudson v. Sowders, 510 F. Supp. 124, 127 (W.D.Ky. 1981), affirmed, 698 F.2d 1220 (6th Cir. 1982) (eyewitness testified that "she spoke to and observed the participants in the robbery and shooting and that her identification was based solely on her recollection of the incident"). Moreover, the possible 51 weeks between the crime and the initial identification and the 34 months between the crime and trial are "seriously negative factor[s]." Neil v. Biggers, 409 U.S. at 201, 93 S.Ct. at 383 *Page 1207 
(lapse of seven months between crime and show-up).
In this particular case, our review of the totality of the circumstances must also include the fact that Officer Hall testified that Ryan viewed the arrest of the defendant on television and that this televised arrest was in very close proximity to the highly suggestive photographic line-up. Defense counsel did not question Ryan about the televised arrest and we therefore cannot determine with any degree of certainty what effect this might have had on Ryan's identification of the defendant. Cf. United States v. Ayendes,541 F.2d at 605 (court would not assume "without any testimony of the witnesses' reactions to [the suggestive aspects of the photographic line-up] that these factors . . . led to misidentification"). However, we observe that when the prosecutor was questioning Ryan about photographs of the defendant which she had viewed, Ryan at one point responded that she had seen the defendant "on T.V." and we note that this televised arrest may well have compounded the blatant suggestiveness of the photographic line-up.
This Court is well aware that the credibility of a witness is for the jury to determine.[2] See, e.g., Reeves v. State, 186 Ala. 14,21, 65 So. 160, 162 (1914); Gurganus v. State,520 So.2d 170, 173 (Ala.Cr.App. 1987). However, in this particular case, where the only evidence incriminating the defendant is the identification by Ryan, we feel that our review of the totality of the circumstances involved must include an acknowledgment of both that fact and the fact that Ryan's testimony regarding the pre-trial identification process differed profoundly and on a number of significant points (e.g., the composition of the photographic spread which was viewed and the time which elapsed between the robbery and the photographic identification) from the testimony of Officer Hall.
Since the photographic line-up from which Ryan initially identified the defendant was impermissibly suggestive, the burden was on the prosecution to show that the in-court identification had an independent basis of reliability. SeeO'Brien v. Wainwright, 738 F.2d at 1142. From the record before us, we cannot say that the prosecution met this burden. As noted above, the evidence regarding the reliability of Ryan's identification is conflicting. We are of the opinion, based on our review of all the facts and circumstances involved, that the suggestiveness of the photographic line-up, coupled, as it was, with evidence indicating a lack of reliability, outweighed the evidence of reliability. We conclude that there was, in this case, a " 'very substantial likelihood of irreparable misidentification.' " Manson v. Brathwaite, 432 U.S. at 116,97 S.Ct. at 2254. Consequently, Ryan's in-court identification of the defendant should have been suppressed.
For the reasons stated above, the judgment of the circuit court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.
[1] Officer Hall testified that this photographic spread had been in a sealed envelope in his file since Ryan's identification of the defendant's photograph. On cross-examination by defense counsel, Hall identified a photographic spread as the one that he had shown to Ryan. While the spread had previously been marked for identification as Court's Exhibit 1, it does not appear to have been offered by either the defense or the prosecution and is not contained in the record before this Court.
[2] Ryan testified only before the jury and was not a witness at the suppression hearing.