This case was originally assigned to another judge on the Alabama Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17, 1995.
The appellant, David Thomas Leitner, was convicted of murder, a violation of § 13A-6-2, Code of Alabama 1975, in the killing of Francis Craven and was sentenced to life imprisonment. The appellant's original conviction was reversed and the case was remanded for a new trial. Leitner v. State, 631 So.2d 273
(Ala.Crim.App. 1993) (Leitner I). This appeal is taken from the second conviction.
Though the facts of this case were set forth in Leitner I, and were substantially the same at the second trial, we will recount them here. Gregory Scott Little was a 16-year-old *Page 1373 
male prostitute in Atlanta, Georgia, when he met the appellant at a bar that was a known gathering place for homosexuals. The appellant offered to pay Little if he would accompany the appellant to Guntersville and stay with him. Little accompanied the appellant to Guntersville, where they lived in a mobile home on Lake Guntersville and then in a duplex in town. Little testified that he and the appellant had an ongoing sexual relationship.
An elderly woman, Vivian Young, moved into the other unit of the duplex. She later married the appellant, but Little and the appellant continued to live together in one unit and Vivian Young continued to live in the other unit. After the marriage, the appellant and Little continued their sexual relationship. During this time, the three of them took a trip to Europe financed entirely by Vivian Young, during which the appellant and Little had separate accommodations from Ms. Young.
The appellant, Little, and Young attended St. Williams Catholic Church in Guntersville where Francis Craven was the parish priest. Craven became close friends with the three of them and they frequently socialized. After Craven taught Little to drive and helped him obtain a driver's license, the appellant became angry and the social relationship between the appellant and Craven began to deteriorate.
On the day of the murder, the appellant and Little drove from Guntersville to Huntsville and then to Birmingham. Craven was flying into Birmingham following a trip to south Florida. They spotted Craven's van leaving the airport and got his attention. After a brief stop, the appellant convinced Craven to follow him, and they ended up in a secluded area of Tuscaloosa County. During the trip, the appellant asked Little if Craven was a homosexual and if Craven had ever made any sexual advances toward him. Little answered both questions negatively.
Once they reached the secluded area, the appellant accused the priest and Little of having a sexual relationship; both denied the accusation. Then the appellant hit Craven on the head with a metal pipe, bound his hands and put him back in his van. At this time, Little ran back to the appellant's vehicle, testifying that he was afraid of the appellant. After leaving to purchase some gasoline, which the appellant put in a metal can, the appellant and Little returned to the murder site and dragged the victim away from his van. The appellant laid him down and hit him again with the pipe, then doused Craven with gasoline and set him on fire.
The appellant drove the van, with Little following in the appellant's vehicle, to a fast food restaurant where they washed up. Then the appellant drove the van down a logging road some distance from the murder site and burned it. Later that evening, when Craven did not show up to conduct mass at St. Williams, the appellant went to "search" for Craven out of concern that he might have had a traffic accident.
The appellant, Little, and Young moved to Atmore, Alabama, to a house purchased by Young. The sexual relationship between the appellant and Little deteriorated and Little moved out. The appellant swore out a warrant for Little's arrest and shortly before his trial, Little told law enforcement officials about the murder.
 I
The appellant argues that the jury's verdict is so decidedly against the great weight of the evidence that the judgment based on it must be reversed. In his brief on appeal, the appellant contends that this issue was preserved by "Defendant's Pre-Trial Motion for Post-Remand Relief on Double Jeopardy Considerations, Including Judgment of Acquittal and Other Relief." This motion was based on facts from the appellant's original trial and appeal regarding whether the state's main witness, Gregory Scott Little, was an accomplice in the murder and whether the state sufficiently corroborated his testimony, as required by § 12-21-222, Code of Alabama 1975, which states:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of *Page 1374 
the offense or the circumstances thereof, is not sufficient."
This presents a question of the sufficiency of the evidence as opposed to the weight of the evidence, as argued by the appellant.
 "This Court recognizes the difference between the sufficiency of the evidence and the weight of the evidence. A question of sufficiency is presented when the State fails to establish a "prima facie case," see C. Gamble, McElroy's Alabama Evidence § 449.05 (4th ed. 1991), whereas a question of weight is presented when the State's evidence is palpably less persuasive than the defense evidence, see Parker v. State, 395 So.2d 1090, 1103 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 1103 (Ala. 1981).
 " '[A] conviction rests upon insufficient evidence when, after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. A reversal based on the weight of the evidence, on the other hand, draws the appellate court into questions of credibility. The "weight of the evidence" refers to "a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other." '
 "Tibbs v. Florida, 457 U.S. 31, 37-38, 102 S.Ct. 2211, 2216, 72 L.Ed.2d 652 (1982) (quoting Tibbs v. State, 397 So.2d 1120, 1123 (Fla. 1981)) (brackets in original; footnote omitted)."
Pearson v. State, 601 So.2d 1119, 1124-25
(Ala.Crim.App. 1992). See also, Zumbado v. State, 615 So.2d 1223, 1240
(Ala.Crim.App. 1993).
A challenge to the weight of the evidence is preserved for appeal by a motion for a new trial stating as a ground that, the verdict is "contrary to law or to the weight of the evidence." Rule 24.1(c)(1), Ala.R.Crim.P.; Zumbado v. State;Lewis v. State, 659 So.2d 183, 185 (Ala.Crim.App. 1994). The appellant failed to make a motion for a new trial; therefore, his challenge to the weight of the evidence is procedurally barred.
 II
The appellant claims that the trial court erred in denying his motions for a judgment of acquittal that challenged the sufficiency of the evidence to support his conviction. The appellant challenges the sufficiency of the evidence on collateral estoppel/double jeopardy grounds, for lack of sufficient corroboration of accomplice testimony, and for general evidentiary insufficiency. These issues will be addressed together in this section of the opinion.
Section 13A-6-2(a)(1), Code of Alabama 1975, provides: "A person commits the crime of murder if: . . . [w]ith intent to cause the death of another person, he causes the death of that person or of another person." To establish a prima facie case against the appellant, the state must prove (1) that Francis Craven is dead; (2) that the appellant caused the death of Francis Craven; and (3) that in committing the acts that caused Francis Craven's death, the appellant intended to cause his death.
 COLLATERAL ESTOPPEL/DOUBLE JEOPARDY ARGUMENT
The foundation is the appellant's collateral estoppel/double jeopardy argument is that this Court's opinion in the first appeal, Leitner I, was a final judgment on the issue of lack of corroboration of the testimony of Gregory Scott Little, who the appellant contends is an accomplice. The appellant cites one sentence from Leitner I in support of this contention. "Only Little's story linked the appellant Leitner to Craven's murder." Leitner v. State, 631 So.2d at 275. This statement, the appellant says, is a determination of an issue of ultimate fact that Little's testimony was not corroborated and the state is, therefore, barred from relitigating that issue in the second trial, based on principles of double jeopardy and collateral estoppel. Ex parte Godbolt, 546 So.2d 991, 993-94
(Ala. 1987). Further, the appellant says that this bar leaves the state with no other evidence to support his conviction and he argued that his conviction should be reversed and a judgment rendered in his favor.
The appellant cites, inter alia, Hull v. State, 607 So.2d 369
(Ala.Crim.App. 1992) *Page 1375 
(Hull II), in support of this contention. That case was an appeal from Hull's second conviction for first degree robbery. In the appeal of her first conviction, Hull v. State,581 So.2d 1202 (Ala.Crim.App. 1990) (Hull I), this Court found that the trial court erred in not suppressing the only eyewitness's photographic identification of Hull, which we held to be "impermissibly suggestive" and that the state then failed to show that the eyewitness's in-court identification "had an independent basis of reliability." 581 So.2d at 1207. We also noted that this eyewitness provided the only evidence that incriminated Hull and we reversed the Hull's conviction and remanded the case. Id. At a hearing on the appellant's motion to dismiss before the second trial, the state admitted that it had no other evidence to connect Hull to the robbery other than the testimony of the eyewitness. The trial judge denied Hull's motion and ruled that the state could provide the evidence necessary to comply with our holding in Hull I. At trial, the state proceeded to do this. Hull was again convicted and again appealed. In Hull II, the appellant argued that the state was barred from relitigating the issue of the reliability of the in-court identification because, she said, this Court had held in Hull I that the state had failed to make a showing of reliability. We held that because the state had had its chance to provide a proper in-court identification in the first trial and had failed to do so, it was barred from doing so in the second trial by the principles of double jeopardy and fundamental fairness. Hull's conviction was again reversed and, because of the lack of other evidence against her, a judgment was rendered in her favor.
While Hull II certainly seems to call for a similar disposition in the present case, it is Hull I that enables us to distinguish the present case from both Hull cases. In HullI, this Court specifically addressed the merits of the appellant's claim regarding the legitimacy of the eyewitness identifications. The statement in that opinion that the testimony of the eyewitness was the only evidence against the appellant was a determination of the condition of the evidence in that case. In Leitner I, we made no determination regarding Little's testimony and whether it had been sufficiently corroborated. The statement relied on by the appellant here merely emphasized the fact that an excerpt from the victim's journals should have been admitted into evidence at the first trial because it tended to support a defense theory that someone else may have killed Francis Craven. This interpretation of that statement is supported by the fact that we never addressed the merits of the sufficiency of the corroboration of the accomplice testimony. In addition, if wehad held that Little was an accomplice and that his testimony was the only evidence against the appellant and that his testimony was not sufficiently corroborated by other evidence, we would have rendered a judgment in his favor, because the evidence would have been clearly insufficient to support his conviction. Compare Hull II (Hull's first conviction was reversed and the case remanded, a judgment was not rendered in her favor, in compliance) with Lockhart v. Nelson,488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) (because the sum of all the evidence presented, including the erroneously-admitted identification, was sufficient to support a conviction).
 "Burks [v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978),] was careful to point out that a reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary 'trial errors' as the 'incorrect receipt or rejection of evidence.' 437 U.S. at 14-16, 98 S.Ct. at 2148-2150. While the former is in effect a finding 'that the government has failed to prove its case' against the defendant, the latter 'implies nothing with respect to the guilt or innocence of the defendant,' but is simply 'a determination that [he] has been convicted through a judicial process which is defective in some fundamental respect.' Id. at 15, 98 S.Ct. at 2149 (emphasis added)."
Lockhart v. Nelson, 488 U.S. at 40, 109 S.Ct. at 290. Our reversal of the appellant's conviction in Leitner I was based on trial error and was not based in any way on evidentiary insufficiency; therefore, the retrial of the appellant in this case did not have double jeopardy or collateral estoppel implications. *Page 1376 
 CORROBORATION OF ACCOMPLICE TESTIMONY
As stated above, the basis of the appellant's argument is that the state failed to corroborate the testimony of Gregory Scott Little, who the appellant argues was an accomplice. The state must present other evidence tending to connect the appellant with the offense in order to allow consideration of the accomplice's testimony. § 12-21-222, Code of Alabama 1975.
First of all,
 "[t]he test used in determining the sufficiency of the evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the State, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054
(Ala.Crim.App. 1992). This Court will not substitute its judgment for that of the jury. Brandon v. State, 542 So.2d 1316
(Ala.Crim.App. 1989)."
Padgett v. State, 668 So.2d 78, 86 (Ala.Crim.App. 1995). In addition, we "must accept as true the evidence introduced by the prosecution" and "must accord the prosecution all legitimate inferences from that evidence." Morgan v. State,589 So.2d 1315, 1317 (Ala.Crim.App. 1991); Jackson v. State,516 So.2d 726, 752 (Ala.Crim.App. 1985); McKinney v. State,654 So.2d 95, 99 (Ala.Crim.App. 1995).
The first step in determining accomplice liability is to ascertain whether Gregory Scott Little was an accomplice. The evidence adduced at trial regarding this issue was in conflict and was susceptible to different inferences; therefore, this issue was a question of fact which was properly submitted to the jury. Williams v. State, 654 So.2d 74, 75
(Ala.Crim.App. 1994).
The law regarding corroboration of accomplice testimony was thoroughly discussed in our recent case, Wilson v. State, [Ms. CR-92-1223, January 13, 1995] ___ So.2d ___ (Ala.Crim.App. 1995):
 " 'The test for determining the sufficiency of the corroborative evidence of the testimony of an accomplice is through a "subtraction process." The test is generally stated:
 ' "[F]irst, the evidence of the accomplice must be eliminated, and then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration. . . ." ' "
 "McCoy v. State, 397 So.2d 577, 585 (Ala.Cr.App.), cert. denied, 397 So.2d 589 (Ala. 1981).
 "As further stated in Chevere v. State, 607 So.2d 361 (Ala.Cr.App. 1992):
 " ' "Corroborative evidence need not refer to any statement or fact testified to by the accomplice. Neither must it be strong nor sufficient of itself to support a conviction. The probative value of the evidence need only legitimately tend to connect the accused with the crime and need not directly do so. Further, corroborative evidence need not directly confirm any particular fact nor affirm each and every material fact testified to by the accomplice. Corroboration may be proven by circumstantial evidence alone." '
 ' "Mills v. State, 408 So.2d [187] at 191 [(Ala.Cr.App. 1981)].
 " ' " 'The entire conduct of the accused may be surveyed for corroborative circumstances and if from them his connection with the offense may be fairly inferred the requirement of the statute is satisfied. 2 Wharton's Criminal Evidence, § 746." '
 " 'Colvette [v. State], 568 So.2d [319] at 321-22 [(Ala.Cr.App. 1990)], quoting Moore v. State, 30 Ala. App. 304, 307, 5 So.2d 644, 645 (1941), cert. denied, 242 Ala. 189, 5 So.2d 646 (1942).
 " ' "Corroborate" is defined as to "strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." Black's Law Dictionary 344 (6th ed. 1990). The evidence presented in corroboration does not have to be enough standing alone to result in a conviction. The corroborating evidence need not be "strong." Andrews v. State, 370 So.2d 320, 322
(Ala.Cr.App.), cert. denied, *Page 1377 370 So.2d 323 (Ala. 1979). See also Reed v. State, 407 So.2d 153 (Ala.Cr.App. 1980), rev'd on other grounds, 407 So.2d 162 (Ala. 1981).
 " 'Section 12-21-222, "does not require corroborative testimony as to material elements of the crime. . . ." Ex parte Bell, 475 So.2d 609, 613
(Ala.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985), but, the corroborative evidence must "tend to connect the defendant with the commission of the crime." § 12-21-222, Code of Alabama 1975. "The corroboration of an accomplice may be shown by circumstantial evidence." Kuenzel v. State, 577 So.2d 474, 515 (Ala.Cr.App. 1990), aff'd, 577 So.2d 531 (Ala. 1991), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).'
 "607 So.2d at 365-66. Further, ' "[a] combination of facts may be sufficient to corroborate the testimony of an accomplice even though each single fact, standing by itself, is insufficient." Jackson v. State, 534 So.2d 689, 691
(Ala.Cr.App. 1988).' Blankenship v. State, 589 So.2d 1321, 1324 (Ala.Cr.App. 1991)."
Wilson v. State, ___ So.2d at ___.
At trial, a witness for the state, Helen Taylor, testified that while she was at a parish Christmas party in December 1988, the appellant pointed at Francis Craven and told her, "That man over there isn't going to last long."
Joe Pearson of the Tuscaloosa Police Department testified that two days after the murder he received a telephone call from the appellant in which the appellant told him that the body found in Tuscaloosa County was that of Francis Craven. The appellant then described different articles of clothing and assorted other items such as a St. Christopher's medal on a silver chain, a gold crucifix, and a medic alert medallion stating that Craven suffered from diabetes. Pearson further testified that the appellant asked if the victim's van had been found and described it in great detail, including the wording of a bumper sticker on it. The appellant also asked Pearson if the victim was wearing shoes because, the appellant said, he would often take his shoes off when driving with someone he knew. The fact that the body when found had no shoes was not public information.
After moving from Guntersville to Atmore some months later, the appellant and his wife adopted Gregory Scott Little. Sergeant Rusty Harrison of the Atmore Police Department testified that he was talking to the appellant at the hospital in Atmore after the appellant had threatened suicide. During their conversation, the appellant suddenly stated, "If this g__ d___ priest hadn't started sending my son gifts, none of this would have happened, anyway."
Matthew Wimberly testified that Little had come to live with him in 1990. The appellant came looking for Little and told Mr. Wimberly that he, the appellant, had struck the victim in the head and that he and Little had burned him.
Lynn Hallmark testified that the appellant told him that while the police suspected him of the murder of the victim, that Little had actually killed Craven.
Investigator Thomas Taylor of the Alabama Bureau of Investigation (A.B.I.) testified that he and another investigator, Mike Manlief, went to Atmore to interview the appellant. During the interview, the appellant told them that he suspected that Francis Craven had been sexually involved with Little. The appellant then volunteered that he thought the killer was an irate father. The appellant further stated that if he had thought that Craven was having a sexual relationship with Little, he would have taken a baseball bat and "bashed" Craven's head.
During a subsequent interview with Investigator Taylor, the appellant stated that Craven had been killed with a lead pipe. At that time, the murder weapon was not known. When Taylor told the appellant that the police did not know this, the appellant started to tremble and became pale. He also started to wring his hands and stated that he might need an attorney.
Taylor further testified that some time later, Little directed the A.B.I. to the murder scene, the location of which had not been released to the public at that time. Little *Page 1378 
also described the murder in details which had, likewise, not been released to the public.
Agent Greg Cole of the A.B.I. testified that the appellant told him, during an interview, that Francis Craven was wearing a Casio watch at the time of his death. He also stated that he and Little were in Huntsville with the appellant's mother on the day of the killing, but the A.B.I. was unable to verify his alibi.
The testimony of Gregory Scott Little and the other prosecution witnesses plus the appellant's actions and knowledge of facts not made public was clearly sufficient to present this case to the jury. In addition, the evidence was sufficient to support the appellant's conviction and to corroborate, if necessary, the testimony of Gregory Scott Little. It is also clear that the protection against double jeopardy was not violated. The trial court did not err in denying the appellant's motions for a judgment of acquittal or his pretrial motion for post-remand relief.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.