783 P.2d 487

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Timothy POST, Defendant–Appellant.**

**No. 11026.**

Court of Appeals of New Mexico.

Nov. 7, 1989.

Hal Stratton, Atty. Gen., Patricia A. Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jerry Daniel Herrera, Albuquerque, for defendant-appellant.

## OPINION

BIVINS, Chief Judge.

Defendant appeals his convictions for commercial burglary, NMSA 1978, § 30–16–3(B) (Repl.Pamp.1984), and contributing to the delinquency of a minor, NMSA 1978, § 30–6–3 (Repl.Pamp.1984). A Ciobla County jury acquitted him of two other charges, arson, NMSA 1978, § 30–17–5(A) (Repl.Pamp.1984), and conspiracy to commit arson, NMSA 1978,

§§ 30–28–2 (Repl.Pamp.1984), 30–17–5(A). Defendant raises four issues, claiming trial court error in (1) failing to suppress a statement defendant gave the police after invoking his right to counsel; (2) admitting evidence of the extent and amount of damage caused by fire; (3) denying motion for mistrial based on claimed prosecutorial misconduct; and (4) denying motion for directed verdict based on insufficiency of the evidence.

. We hold defendant's statements should have been suppressed. Because of acquittal on the arson charges, the evidentiary questions will not arise on retrial; therefore, we do not decide them. We hold the prosecutor's remarks during closing argument did not require a mistrial. Finally, we set aside the convictions of commercial burglary and contributing to the delinquency of a minor and remand for new trial on those counts without use of defendant's statements.

## I. *Facts and Background*

On or about January 28, 1988, Belen High School sustained extensive fire damage. Suspecting arson, the Belen police investigated. A "Crimestoppers" tip identified defendant's son, Raymond Post, as the arsonist. Detective Sanchez interviewed Raymond, who confessed. Raymond implicated his father in the confession.

On February 1, 1988, Sanchez arrested defendant and obtained a statement in which defendant admitted participating with his son in burning the school.

## II. *Discussion*

### A. *Invocation of Right to Counsel*

Before interrogating defendant, Sanchez read defendant his *"Miranda* rights," *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), from a form. After the detective read the portion of the form that advised, "If you can not afford an attorney, one will be appointed for you at no cost to you," defendant said, "I will need an attorney." Sanchez continued reading the form, which advised defendant

if he decided to answer the questions now, without an attorney, he had the right to stop answering at any time until he could talk to an attorney. He then asked defendant if he understood his constitutional rights. Defendant initialed each question, indicating he did understand. At Sanchez's request, he then read and signed a waiver of rights, indicating his willingness to make a statement without an attorney present.

At the motion to suppress, defendant's attorney questioned Officer Sanchez and received the following responses:

Q: Before you [obtained a statement from defendant], do you recall you telling him if he could not afford an attorney as part of his Miranda warnings that an attorney would be appointed for him?

A: Yes.

Q: All right. Do you recall him telling you that he wanted to see an attorney and that he could not afford one?

A: He said he would need an attorney. He did not say he wanted an attorney at that point. He said he would need an attorney.

Q: Okay, you didn't make any effort at that time to stop the questioning to seek counsel for him, did you?

A: At that point, no. He didn't say he wanted an attorney at the time.

Defendant first denied any involvement in the arson, but upon being informed by Sanchez that Raymond had been taken into custody and had given a statement implicating his father, defendant made a verbal statement. After the *Miranda* rights had been read to him a second time, defendant gave a written statement concerning his part in breaking into the school, his actions at the school with his son, and his use of codeine.

Defendant moved before trial to suppress the oral and written statements given the police. In denying the motion, the trial court relied on *United States v. Obregon*, 748 F.2d 1371 (10th Cir.1984). The court's order denying the motion to suppress also contained a handwritten notation following the citation to *Obregon*, reading: "From the totality of the circumstances the Defendant knowingly an [sic] intelligently waived his right to counsel."

Waiver of counsel must be more than knowing and intelligent; it must be voluntary. In *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981), the United States Supreme Court held:

[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.... [A]n accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation ... until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. [Footnote omitted.]

No claim is made that defendant initiated any communication, exchange, or conversation. Thus, we believe *Obregon* is distinguishable. The defendant in that case, who had requested an attorney, also indicated that he waived his rights on a form that included the text for an advice of rights as well as a place for a waiver of rights. The court in *Obregon*, however, held that the defendant had waived his rights not only because he signed the form but also because he had initiated further communication with the police, believing that making a statement would be to his advantage. *United States v. Obregon.* In this case, we have no evidence that defendant initiated communication with the police, only that he signed the waiver form. The record indicates that Sanchez asked defendant to sign the place indicating a waiver of his rights. In addition, defendant made a verbal statement in response to the police informing him that his son had made a statement implicating him. Under these circumstances, we conclude the record shows a continuation of questioning, or its equivalent, after defendant claims he asserted his right to counsel.

■ The critical question is therefore whether defendant sufficiently invoked his right to counsel when he said he would need an attorney. The state contends that defendant's request was equivocal. Detective Sanchez testified that he understood defendant to mean he wanted an attorney for trial, not at that moment. Defendant testified otherwise, but since the trial court denied the motion, we assume it accepted Sanchez's version of what occurred.

*Miranda* states that a suspect invokes his right to counsel when he "indicates in any manner" he wishes to consult an attorney. 384 U.S. at 444–45, 86 S.Ct. at 1612–13. *Edwards* speaks of a right that has been "specifically invoked," 451 U.S. at 482, 101 S.Ct. at 1883–84, and *Brewer v. Williams,* 430 U.S. 387, 404–05, 97 S.Ct. 1232, 1242–43, 51 L.Ed.2d 424 (1977), refers to clear expressions of desire for counsel. In *State v. Dominguez,* 97 N.M. 592, 642 P.2d 195 (Ct.App.1982), this court, applying the rule in *Miranda,* observed that if a defendant indicates that he wishes to consult with an attorney before speaking, there can be no questioning.

In light of these decisions, we hold that defendant here was attempting to assert his right to counsel and did not waive his right to an attorney. The response, "I will need an attorney," leaves little doubt as to defendant's wishes. *See Maglio v. Jago,* 580 F.2d 202, 203, 205 (6th Cir.1978) ("Maybe I should have an attorney" sufficient invocation of right to counsel).

Assuming the state is correct that defendant's statement was equivocal, the cases it relies on do not support its position. The fifth and ninth circuits hold that, where a suspect makes an equivocal assertion of right to counsel, all questioning must cease, except the police may attempt to clarify the suspect's desire for counsel. *See United States v. Fouche,* 776 F.2d 1398, 1404–05 (9th Cir.1985); *United States v. Cherry,* 733 F.2d 1124, 1130–31 (5th Cir. 1984); *Thompson v. Wainwright,* 601 F.2d 768, 772 (5th Cir.1979). Questions aimed at clarifying the desire for counsel must be strictly limited to that purpose, and if clarification reveals the suspect wants counsel,

all interrogation must stop until counsel is provided. *United States v. Fouche,* 776 F.2d at 1405.

Even if defendant's response, "I will need an attorney," could be considered equivocal, the questions which followed did not meet the criteria of *Fouche* and *Cherry.* Detective Sanchez did not attempt to clarify defendant's desire for counsel. He continued to read the remaining rights, had defendant initial each, and then obtained a waiver of those rights from defendant. This is not a permissible method to either clarify an accused's equivocal request for counsel or to waive the accused's successfully invoked right to counsel. Thus, even under *Fouche* and *Cherry,* the statements given by defendant must be suppressed.

■ A heavy burden rests on the state to demonstrate an effective waiver of the fifth amendment right to counsel. *Miranda v. Arizona,* 384 U.S. at 475, 86 S.Ct. at 1628. The determination of the voluntariness of an alleged waiver of a suspect's right to counsel depends not merely upon a formal statement of waiver, but upon all the facts and circumstances of the particular case. *State v. Greene,* 92 N.M. 347, 588 P.2d 548 (1978). That burden was not satisfied here. The trial court erred in not suppressing defendant's statements.

B. *Prosecutorial Misconduct*

Defendant claims the prosecutor went "beyond the bounds of fair conduct" when, in closing argument, the prosecutor told the jury, in effect, not to let defendant avoid responsibility for his actions by hiding behind his codeine addiction. Defendant's defense was that he was unable to form the requisite specific intent to commit commercial burglary due to the effects of alcohol and codeine he had ingested that day. Defendant moved for a mistrial based upon the prosecutor's statement, which the trial court denied.

■ Because of the likelihood that on retrial defendant will assert the same defense, which may invite a similar remark, we address this issue. We hold that the extensive defense evidence regarding de-

fendant's prolonged codeine addiction following an ankle surgery in 1978 and his use of codeine and alcohol on the night of the arson effectively opened the door to the comment made by the prosecutor. *See State v. Taylor,* 104 N.M. 88, 717 P.2d 64 (Ct.App.1986) (where defendant opens the door to comments by the prosecutor, such comments are invited and do not constitute reversible error, even if otherwise improper).

We reject defendant's claim under this point and hold that the trial court did not err in denying the motion for mistrial.

### C. *Sufficiency of the Evidence to Support Convictions*

Defendant contends that the verdicts of guilty on commercial burglary and contributing to the delinquency of a minor were against the weight of the evidence. He claims the trial court erred in denying his motion for a directed verdict.

In addressing this question, we are mindful of our holding herein that the state may not introduce defendant's statement on retrial. The question arises whether this case should be remanded for retrial without the statement, or whether defendant should be discharged because, without the statement, there is insufficient evidence to convict him.

A recent United States Supreme Court decision, *Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), addressed this issue. The Court held that, when a trial court erroneously admits evidence that is excluded on appeal, and the remaining evidence is insufficient to support a verdict, double jeopardy does not preclude a retrial. Instead, the appellate court must consider all the evidence admitted by the trial court when deciding whether there was sufficient evidence to support a conviction. If all of the evidence, including the wrongfully admitted evidence, is sufficient, then retrial following appeal is not barred. Thus, the *Lockhart* decision allows the state to retry a defendant and introduce other evidence of guilt not introduced at the first trial that might replace the wrongly admitted evidence.

*Cf. State v. Austin,* 104 N.M. 573, 725 P.2d 252 (Ct.App.1985) (reversing and discharging where without wrongfully admitted evidence there was insufficient evidence to support a conviction on retrial).

We find the *Lockhart* reasoning sound and adopt it as law. We will not speculate as to what additional evidence or alternate theories the state could have brought forward had the trial court properly excluded the inadmissible evidence. A contrary rule would force the state to "overtry" its cases, to introduce all its available evidence, however redundant, to ensure that it could retry a defendant if some of its evidence is held on appeal to be inadmissible. *United States v. Gonzalez–Sanchez,* 825 F.2d 572, 588 n. 57 (1st Cir.), *cert. denied sub nom. Latorre v. United States,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). We recognize that the dissenting judges in *Lockhart* have suggested some distinction should be made between evidence that is suppressed due to its unreliability or lack of probative character and evidence that is stricken in compliance with evidentiary rules grounded in other public policies. We assume but need not decide that this distinction is appropriate. In this case, there is no suggestion that the evidence to be suppressed is unreliable or lacks probative value.

Following *Lockhart,* we consider all the evidence admitted at trial, including defendant's statements, in determining whether retrial is permissible. We hold that retrial is permissible. Defendant's own statement, coupled with testimony that entry was unauthorized and that defendant's son was a high school student, provides sufficient evidence to convict on commercial burglary and contributing to the delinquency of a minor.

According to the written statement, defendant had been taking codeine and drinking alcohol on the day of the incident. He was not "thinking straight" and both he and Raymond were in a "wild mood." Raymond said, "[T]he school is going down." Defendant stated he thought it wrong but was too intoxicated to understand. Raymond drove defendant's car to Belen High

School, told defendant to "watch out for him," jumped the fence, and "was breaking things & li[g]hting fires." Raymond returned, moved the car, and went back into the school building. Defendant wrote, "I know I should have stopped him but I was very drunk." Raymond came back to the car and told defendant, "[Y]ou should do something too." Defendant crossed the fence with his son's help and went inside. "I broke some windows while Raymond was setting fires," he wrote. When the alarm went off, the two left. A representative of the school testified that defendant had no authority to enter the school. Although there was no direct testimony that defendant's son was a minor, Raymond did testify that he was a high school student.

 That evidence supports the convictions rendered. Reasonable minds could find that defendant entered Belen High School without permission; when defendant entered the high school he intended to commit arson; and defendant was capable of forming the intent to commit arson. Therefore, the trial court's denial of directed verdict on the commercial burglary charge was proper. Reasonable minds could also find that defendant helped or did not stop his son from committing arson; this encouraged his son to commit arson; defendant acted intentionally; and his son was under age eighteen. Therefore, the trial court's denial of a directed verdict on the charge of contributing to the delinquency of a minor was proper. Whether the state can replace it with other evidence is not to be decided on this appeal. *See Lockhart v. Nelson.*

III. *Conclusion*

Reversed and remanded for new trial consistent with this opinion.

IT IS SO ORDERED.

DONNELLY and MINZNER, JJ., concur.