In 1989, Carol Lacey Hull, the appellant, was convicted of robbery in the first degree and was sentenced as a habitual offender to imprisonment for life without possibility of parole. This conviction was reversed on direct appeal. Hullv. State, 581 So.2d 1202 (Ala.Cr.App. 1990). The appellant was retried in 1991, was again convicted, and was again sentenced to imprisonment for life without possibility of parole. This appeal is from the appellant's second conviction and sentence.
 THE 1989 TRIAL
At the 1989 trial, the State presented evidence that on February 1, 1987, a lone gunman robbed the pharmacist at Stacey's Drugstore in Bay Minette, Alabama, then ran across the street to a waiting automobile being driven by a woman. Eyewitness Becky Ryan testified before the jury that *Page 371 
she was shown a group of photographs a week and a half to two weeks after the robbery and that she identified one of the photographs as that of the driver of the get-away car.Hull, 581 So.2d at 1204, 1207 n. 2. She then made an in-court identification of the appellant as the get-away driver. Hull, 581 So.2d at 1204.
Kenneth Hall, the investigating officer, testified that Ryan did not identify the appellant's photograph from a photographic array until almost one year after the robbery. He stated that he prepared the array and that this array was "composed of four color photographs and one black and white photograph. . . . The black and white photograph was a photograph of the [appellant]." Hull, 581 So.2d at 1203-04.
The appellant maintained that the pre-trial photographic array was unduly suggestive, that Ryan's in-court identification was tainted by this suggestive array, and that her identification testimony should be excluded because her in-court identification of the appellant had not been shown to be independently reliable. R. 125-32 (CR 89-66).[1] Although the trial court correctly recognized that the photographic array containing a black and white photograph of the appellant and color photographs of four other subjects was "impermissibly suggestive," R. 139-40 (CR 89-66), see Hull, 581 So.2d at 1204-05, it denied the appellant's motion to exclude Ryan's identification testimony.
 THE FIRST APPEAL
On direct appeal from her 1989 conviction, the appellant argued that "the in-court identification by [Ryan] should have been excluded because that identification was the product of an unduly suggestive photographic array displayed to the witness prior to trial and had no independent basis of reliability."Hull, 581 So.2d at 1202-03. Applying the factors set out in Neil v. Biggers, 409 U.S. 188, 199,93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), this Court determined that the State, in fact, had not met its burden of proving that Ryan's in-court identification of the appellant "had an independent basis of reliability." Hull, 581 So.2d at 1207. Of the five indicators of "independent reliability" set out in Neil v. Biggers, the State failed to offer evidence on three. See Hull, 581 So.2d at 1205-06. We held that the unduly suggestive pretrial photographic line-up, "coupled, as it was, with evidence indicating a lack of reliability," constituted "a 'very substantial likelihood of irreparable misidentification,' " and that, "[c]onsequently, Ryan's in-court identification of the [appellant] should have been suppressed." Hull, 581 So.2d at 1207 (quotingManson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243,2254, 53 L.Ed.2d 140 (1977)).
Although we noted that "the only evidence incriminating the [appellant was] the identification by Ryan,"Hull, 581 So.2d at 1207, we did not render judgment in favor of the appellant. Instead, this Court reversed and remanded the cause "for further proceedings not inconsistent with" our opinion. Id. Our disposition of the first appeal was in conformance with Lockhart v. Nelson,488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). In that case, the United States Supreme Court held that "the Double Jeopardy Clause allows retrial when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction." 488 U.S. at 40,109 S.Ct. at 290. See also Fortier v. State, 564 So.2d 1041,1042-43 (Ala.Cr.App.), cert. denied, 564 So.2d 1043 (Ala. 1990).
Lockhart mandates that a reviewing court "must consider all of the evidence admitted by the trial court in determining whether retrial is permissible under the Double Jeopardy Clause." 488 U.S. at 41, *Page 372 109 S.Ct. at 291. If the sum of all the evidence, including the erroneously admitted evidence, is sufficient to support the conviction, there is no double jeopardy bar to retrial.Id.[2]
The appellant's first conviction was not due to be rendered because the sum of all the evidence presented at the first trial, including the erroneously-admitted identification by Ryan, was sufficient to support the judgment of conviction. Therefore, under Lockhart and based on what this Court knew at the time of our disposition of the firstappeal, the appellant's retrial was not barred by double jeopardy principles. This Court's disposition of the first appeal was based only on what was contained in the record of that appeal and was undertaken without any knowledge of or speculation about what other evidence the State might have to offer in the event of a retrial. Compare State v.Post, 109 N.M. 177, 181, 783 P.2d 487, 491 (1989) ("[w]e will not speculate as to what additional evidence or alternate theories the state could have brought forward had the trial court properly excluded the inadmissible evidence").
 THE 1991 TRIAL
At the pre-trial hearing on the appellant's motion to dismiss, the prosecutor[3] informed the trial court that he had no other evidence, aside from Ryan's testimony, that would connect the appellant to the offense. The prosecutor maintained, however, that Ryan's testimony should be admitted on retrial if it "cover[ed] all the points" missing from her testimony at the first trial, namely: Ryan's opportunity to view the get-away driver at the time of the crime; her degree of attention; and the level of certainty demonstrated by Ryan when she chose the appellant's picture from the photographic array. R. 24. These are, of course, the three Neil v.Biggers reliability indicators as to which the State utterly failed to offer evidence at the first trial. SeeHull, 581 So.2d at 1205-06.
In response to the State's contention that it could remedy the deficiencies in Ryan's testimony, defense counsel argued that this Court's decision in Hull, which found a "very substantial likelihood of irreparable
misidentification" of the appellant at the first trial, precluded the admission of that testimony in another trial. The appellant insisted that the State, having once failed to meet its burden of proving the reliability of Ryan's in-court identification of the appellant, was not entitled to another opportunity to meet that burden, or to repair, at the second trial, what this Court said was "irreparable" at the first trial. R. 33, 35.
The trial court interpreted our decision in Hull as a set of directions for avoiding evidentiary error on retrial. Over the strenuous objection of the appellant, the trial court ruled that the State could "attempt to provide the evidence that the Court [of Criminal Appeals] indicated would be necessary" on the issue of reliability. R. 28-29. In fairness to the trial court, it appears that at least part of its reason for reaching that conclusion was the fact that this Court did not reverse and render on the first appeal.
Before the second trial, Ms. Ryan testified at a hearing on the appellant's motion to suppress. At that hearing, the State specifically questioned her about her opportunity to view the driver of the get-away car at the time of the crime, her degree of attention, and her level of certainty in choosing the appellant's photograph out of the photographic line-up. Ryan's responses were positive and unambiguous. The State indeed "cover[ed] all the points" missing from her testimony at the first *Page 373 
trial. In fact, the assistant district attorney admitted that prior to putting Ryan on the witness stand at the suppression hearing, he had reviewed with her our opinion in Hull
in order to "expla[in] to her why she was back here." R. 65, 74.
Not surprisingly, the trial court concluded that Ryan's testimony at the suppression hearing did not suffer from the same infirmities as her testimony at the first trial. The court ruled that her identification satisfied the Neil v.Biggers criteria for admissibility, and he denied the motion to suppress.
At trial, the State again presented evidence that a lone gunman demanded and obtained drugs from the pharmacist at Stacey's Drugstore, then ran across the street to a white car driven by a woman. Ms. Ryan again identified the appellant as the driver of the get-away car. The appellant was again convicted.
 THE INSTANT APPEAL
In this appeal from her 1991 conviction, the issue presented is whether, on retrial, the State was precluded from relitigating the issue of the reliability of Ms. Ryan's in-court identification of the appellant where the appellant's original conviction had been reversed because the State had not proven an independent basis of reliability for that identification, it being undisputed that the in-court identification followed an unduly suggestive pre-trial photographic lineup. We hold that under these circumstances, the State should not have been permitted to "rehabilitate" Ms. Ryan's identification of this appellant.
It is fundamental that in a criminal prosecution the burden is on the State to prove beyond a reasonable doubt each and every element of the offense charged. The State's burden of proof does not end with establishing that a crime occurred, however. The State must also prove beyond a reasonable doubt that the accused committed the crime. If the State fails to meet its burden of proof with regard to either an element of the offense or to the issue of the identity of the perpetrator, principles of double jeopardy preclude a second trial of the accused. See Burks v. United States, 437 U.S. 1,98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
The State clearly proved at the appellant's first trial that a robbery in the first degree had occurred. See Ala. Code 1975, § 13A-8-41. With regard to the issue of whether the appellant was the perpetrator of the offense (or, more specifically, whether the appellant was the driver of the get-away car), the State presented only Ryan's testimony. Had an independent basis for the reliability of Ms. Ryan's identification of the appellant been established, her testimony would have been sufficient to connect the appellant with the robbery. See Hyter v. State, 545 So.2d 194, 198
(Ala.Cr.App. 1988) ("eyewitness's identification of the appellant as one of the perpetrators was sufficient to connect him with the offense").
However, the appellant established that the photographic line-up was "impermissibly suggestive" and that the eyewitness identification was unreliable. The fact that the pre-trial identification procedures were suggestive placed "the burden o[n] the prosecution to show by clear and convincing evidence that the in-court identification testimony had an independent source and did not stem from the . . . unfair pretrial confrontation." Speigner v. State, 369 So.2d 39, 42
(Ala.Cr.App.), cert. denied, 369 So.2d 46 (Ala. 1979). Because Ryan's testimony was the only evidence connecting the appellant to the robbery, the State's burden of proving the independent reliability of the identification was inextricably linked with its burden of proving an issue necessary to support the conviction, i.e., that the appellant was the driver of the get-away car.
We held in Hull, 581 So.2d at 1207, that the State's evidence in the first trial was insufficient to meet its burden of proof on the matter of reliability and that Ryan's identification testimony "should have been suppressed." We did not address the issue of whether Ryan's identification testimony would be admissible upon retrial. Faced with that question in this appeal, we hold that it was not and that, consequently, the *Page 374 
appellant's conviction is due to be reversed and a judgment rendered in her favor.
Our decision that the State was not entitled to relitigate the identification issue is grounded partially on double jeopardy considerations and partially on the concept of fundamental fairness embodied in the constitutional protections afforded by both double jeopardy principles and due process of law.
I. JEOPARDY CONSIDERATIONS
 "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow 'the State . . . to make repeated attempts to convict an individual for an alleged offense,' since '[t]he constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.' "
Burks v. United States, 437 U.S. at 11,98 S.Ct. at 2147 (footnote omitted). There was no doubt at the first trial as to whether the pre-trial identification was tainted — the trial court correctly held on the record that it was "impermissibly suggestive." As noted above, this holding placed the burden on the State to establish that the in-court identification had an independent basis of reliability.Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, which sets out the five factors of identification reliability, and Manson v. Brathwaite, 432 U.S. 98, 114,97 S.Ct. 2243, 2253, which reaffirms those factors, were decided by the United States Supreme Court in 1972 and 1977, respectively. The analyses employed in determining the admissibility of identification testimony and in "rehabilitating" an identification derived from unnecessarily suggestive procedures were well-settled at the time of the appellant's first trial in 1989.
This was not a case involving a question of first impression with regard to the admissibility of evidence. Compare Exparte Perry, 586 So.2d 242 (Ala. 1991) (establishing procedures for admission of DNA evidence). The trial court had ruled that the photographic array was suggestive; the appellant had objected to the in-court identification as unreliable; and there is simply no legitimate or acceptable excuse for the State's failure to establish the Neil v. Biggers
factors at the first trial. As previously noted, in this case, the prosecution's burden of proof of reliability of the identification was inextricably linked to its burden of proof on the matter of identity.
 "The general design of the Double Jeopardy Clause of the Fifth Amendment is that described in Green v. United States [, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)]:
 " 'The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' "
United States v. DiFrancesco, 449 U.S. 117, 127-28,101 S.Ct. 426, 432, 66 L.Ed.2d 328 (1980). Although it clearly had the opportunity to establish that the in-court identification was independently reliable, the prosecution failed to meet its burden of proof on this matter at the first trial and the proof of identity should have been suppressed. To permit the State to "make repeated attempts" to prove the reliability of an identification that was the prosecution'sonly evidence incriminating the appellant flies in the face of both Burks and the concept of fundamental fairness. *Page 375 
The result we reach in this case is required by Ex parteHergott, 588 So.2d 911 (Ala. 1991), decided by the Alabama Supreme Court approximately six months after the release of our decision in Hull. Hergott, who was charged with trafficking in cannabis, objected to the introduction of the potted marijuana plants as the fruit of an illegal, warrantless search. At the suppression hearing, the State contended that the marijuana plants were found in an "open field" and that the seizure of those plants thus fell within one of the recognized exceptions to the warrant requirement. In support of its position, the State presented the testimony of the seizing officer, who estimated the distance from the defendant's house to the garden where the marijuana plants were found to be 75 yards. The defendant maintained that the plants had been found within the curtilage of his rural home. The trial court held that the marijuana was seized from an open field and was admissible.
On appeal, this Court held "that it was unable to determine from the record whether the State had 'overcome the presumptions of unreasonableness that attaches to all warrantless searches and home entries.' " Ex parteHergott, 588 So.2d at 912. We remanded the cause to the trial court with directions to make a determination of whether the area from which the marijuana plants had been seized was within the curtilage of the defendant's home and to make written findings of facts on that matter. Hergott v.State, 554 So.2d 1139, 1142 (Ala.Cr.App. 1988). On remand, the trial court obtained additional evidence by personally visiting the defendant's home. He found the distance between the defendant's home and the garden to be over 100 yards and concluded that the marijuana plants had not been found within the curtilage of the defendant's home. On return to remand, this Court affirmed this finding, Hergott v. State,588 So.2d 908 (Ala.Cr.App. 1990), and the defendant petitioned the Alabama Supreme Court for certiorari review.
The Supreme Court held that this Court erred in remanding the cause for a further determination on the question of whether the marijuana was found in an open field or within the curtilage of the defendant's home.
 "The State has the burden to prove that a warrantless search was reasonable. . . . The State, at the time the motion to suppress was made, had the opportunity to prove distance by supplying other witnesses, but the State chose to rely upon the officer's prior testimony as to the proximity of the garden to the residence.
". . . .
 "In the instant case, the Court of Criminal Appeals found that the State had failed to supply sufficient evidence on the record. Specifically, that court found that there was no testimony concerning the condition and purpose of the outbuildings and also that the officer's testimony regarding the distance of the garden from the house was speculative and uncertain. . . . Compare Burks, 437 U.S. at 4, 98 S.Ct. at 2143 (Government did not rebut petitioner's proof because witnesses failed to express definite opinions on the precise questions that were critical in cases involving insanity defenses). This case is like Burks; . . . the Court of Criminal Appeals . . . held that it was unable to hold that the State had met its burden of overcoming a substantive presumption in favor of petitioner. We hold that the Double Jeopardy Clause prevents the Court of Criminal Appeals from sending the issue back to the trial court for a second chance to supply on the record evidence sufficient to prove that the warrantless search fell within the 'open field' exception."
Ex parte Hergott, 588 So.2d at 914. Compare Statev. Souza, 60 Wn. App. 534, 805 P.2d 237, 240 (wherein the court noted that a remand "authoriz[ing] either party to present additional evidence in the case . . . [would] risk
violating the double jeopardy clause by 'affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding' "), review denied,116 Wn.2d 1026, 812 P.2d 103 (1991). *Page 376 
The most significant portion of Ex parte Hergott, however, is the "deci[sion] regarding] how to dispose of the case." 588 So.2d at 915. Citing Rule 11(a)(2), Fed.R.Crim.P. (authorizing a conditional guilty plea reserving the right to appeal any adverse determination of any specified pretrial motion), for the proposition that Hergott would be allowed to withdraw his guilty plea, and Lockhart v. Nelson, supra, for the proposition that the State would be entitled to retry Hergott, our Supreme Court held that the State wouldnot be allowed to use the fruits of the warrantless search against Hergott upon retrial:
 "[T]he State failed to produce sufficient evidence in opposition to the motion to suppress to overcome the presumption of unreasonableness that attached to the warrantless search of Hergott's property. Therefore, the fruits of the search should not have been admitted. Hergott is allowed to withdraw his guilty plea and the State may proceed to trial. However, the evidence seized incident to the warrantless search of his property may not be used against him, because the State, when presented with the opportunity to establish its case against him, failed to do so, and under the Double Jeopardy Clause, the State does not get a second chance."
Ex parte Hergott, 588 So.2d at 916 (emphasis added).[4] Compare Reimnitz v. State's Attorney of CookCounty, 761 F.2d 405, 411 (7th Cir. 1985) (wherein the court assumed that an appellate court determination of a suppression issue has double jeopardy implications on retrial);United States v. McKim, 509 F.2d 769, 775-76 (5th Cir. 1975) (government estopped from asserting, in trial of accused for escape from jail in which he was incarcerated following arrest for possession of marijuana, that arrest was lawful, where lawfulness of arrest had already been litigated between same parties and decided in accused's favor on direct appeal of marijuana conviction); State v. Therrien, 110 N.M. 261,265, 794 P.2d 735, 739 (App. 1990) (wherein the court assumed that, on retrial after reversal for insufficient search warrant affidavit, fruits of search were inadmissible);State v. Henderson, 109 N.M. 655, 664, 789 P.2d 603,612 (1990) (when State failed to establish proof of statutory aggravating circumstance, double jeopardy clause barred State from "attempting to prove on remand that independent facts exist which support" the aggravating circumstance); Statev. Post, 109 N.M. at 181-82, 783 P.2d at 491-92 (when conviction reversed for admission of confession in violation ofEdwards v. Arizona, confession was inadmissible on retrial and prosecution must introduce other evidence of guilt. "Whether the state can replace [the confession] with other evidence is not to be decided on this appeal").[5] *Page 377 
We find no discernible difference between the present case and Ex parte Hergott. In both cases, the State had a well-established burden of proof with regard to the admissibility of certain evidence necessary to establish its case. In both cases the State failed to meet that burden of proof. Because Ms. Ryan's in-court identification was not shown to be independently reliable at the first trial, it should have been suppressed. Under the holding of Ex parteHergott, the State should not have been given a "second chance" to muster the necessary proof, and Ryan's identification testimony should not have been admitted at the second trial.
The Hergott opinion, with its reference toLockhart v. Nelson, also confirms the correctness this Court's decision of "reversed and remanded" on consideration of the first appeal. As noted above, Lockhart held that a retrial was permitted where "a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, [even though the court] also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction." 488 U.S. at 40,109 S.Ct. at 290. The holding in Lockhart is anchored by the particular facts and considerations that were present in that case. We have neither the same facts nor the same policy considerations present in the case before us.
The evidence erroneously admitted in Lockhart was a certified copy of a prior conviction used to prove that Nelson was a habitual offender. Unbeknownst to the prosecutor, that conviction had been previously pardoned by the governor and, under Arkansas law, it could not be used to enhance Nelson's sentence. However, no objection to the admission of the conviction was made at trial. On collateral attack, Nelson succeeded in establishing the invalidity of the conviction. Nelson, however, had convictions to spare, and "the State announced its intention to resentence [Nelson] *Page 378 
as a habitual offender, using another prior conviction not offered or admitted at the initial sentence hearing."Lockhart, 488 U.S. at 37, 109 S.Ct. at 289. Nelson interposed a plea of double jeopardy. The United States Supreme Court held that the Double Jeopardy Clause was not implicated by the resentencing. In so holding, the Court distinguished between reversal for "evidentiary sufficiency" and reversal for "trial error":
 "Burks was careful to point out that a reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary 'trial errors' as the 'incorrect receipt or rejection of evidence.' 437 U.S. at 14-16 [98 S.Ct. at 2148-50]. While the former is in effect a finding 'that the Government has failed to prove its case' against the defendant, the latter 'implies nothing with respect to the guilt or innocence of the defendant,' but is simply a determination that '[he] has been convicted through a judicial process
which is defective is some fundamental respect.' Id. at 15 [98 S.Ct. at 2149]."
Lockhart, 488 U.S. at 40, 109 S.Ct. at 290 (emphasis and brackets added by the Court in Lockhart).
The same distinction between "evidentiary sufficiency" and "ordinary trial error" cannot be drawn in the present case. By offering a certified copy of Nelson's conviction, the prosecutor in Lockhart had met his burden of proof with regard to the admission of that conviction. The burden then shifted to Nelson to show that the conviction had been pardoned or was otherwise inadmissible, which he did not do at trial. In the present case, the appellant established at trial that the pre-trial identification procedures were impermissibly suggestive. This created an additional burden of proof upon the State with regard to the issue of reliability — the prosecution could not just present Ryan's in-court identification; it had to prove that that identification had an independent basis of reliability.[6] The State utterly failed to meet this burden with regard to the only evidence it had connecting the appellant to the robbery.
Another factual difference between this case andLockhart, is that the Lockhart prosecutor had evidence to spare and, on retrial, he was able to replace invalid evidence with valid evidence. If in this case the State had had other evidence connecting the appellant to the robbery that it could have substituted for Ryan's testimony, there would apparently have been no bar to reprosecution underLockhart. See State v. Post, 109 N.M. at 181,783 P.2d at 491 (wherein the court observed that "theLockhart decision allows the state to retry a defendant and introduce other evidence of guilt not introduced at the first trial that might replace the wrongly admitted evidence"). But compare Harris v. State,783 S.W.2d 253 (Tex.App. 1989) (when State failed to sustain burden of proving that prior conviction used for enhancement became final before date of triggering offense, double jeopardy clause precluded State from using that conviction, or any other conviction in its place, on resentencing). However, the prosecution admitted that, without Ryan's identification testimony, it had no case. Compare State v. Martin,595 So.2d 592, 598 (La. 1992) (wherein the court reversed because of tainted identification testimony, held thatLockhart permitted another trial, but cautioned that on retrial the state must "act in good faith to determine whether it can produce sufficient evidence absent the tainted identification testimony").
In Foster v. California, 394 U.S. 440,89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), the United *Page 379 
States Supreme Court reversed a conviction on the ground that an in-court identification was tainted by a prior suggestive identification procedure. Writing in dissent, Justice Black took the majority to task for "fail[ing] to spell out exactly what should happen to this defendant if there must be a retrial, and thus avoid[ing] the apparently distasteful task of specifying whether (1) at the new trial the jury would again be permitted to hear the eyewitness' testimony and the in-court identification, so long as he does not refer to the previous lineups, or (2) the eyewitness' 'tainted' identification testimony must be entirely excluded, thus compelling Foster's acquittal." Foster, 394 U.S. at 445, 89 S.Ct. at 1130
(Black, J., dissenting). At least one court has interpretedFoster to mean that the identification should be "ruled out" on retrial. See United States ex rel. Phipps v.Follette, 428 F.2d 912, 915 n. 4 (2d Cir.) (wherein the court observed that it was "unable to share Mr. Justice Black's view that the majority opinion [in Foster] was ambiguous on this point"), cert. denied, 400 U.S. 908,91 S.Ct. 151, 27 L.Ed.2d 146 (1970).
With the following observation, the Lockhart court appears to have recognized the distinction between replacing invalid evidence with valid evidence and "rehabilitating" evidence rendered improper by the prosecution's failure to carry its burden of proof:
 "Permitting retrial in this instance is not the sort of governmental oppression at which the Double Jeopardy Clause is aimed. . . . Had the defendant offered evidence at the sentence hearing to prove that the conviction had become a nullity by reason of the pardon, the trial judge would presumably have allowed the prosecutor an opportunity to offer evidence of another prior conviction to support the habitual offender charge. Our holding today thus merely recreates the situation that would have been obtained if the trial court had excluded the evidence of the conviction because of the showing of a pardon."
Lockhart, 488 U.S. at 42, 109 S.Ct. at 291.
The instant case vividly demonstrates that allowing the State to have a "second chance" to establish that the identification testimony was reliable is exactly the "sort of governmental oppression at which the Double Jeopardy Clause is aimed." Here, the prosecutor was able to refine and improve the evidence (even to the point of reviewing with the witness the defects in her prior testimony by reference to this Court's opinion in Hull v. State) — precisely what the Constitution forbids. See Ashe v. Swenson,397 U.S. 436, 447, 90 S.Ct. 1189, 1196, 25 L.Ed.2d 469 (1970). "[F]orbid[ding] a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding" is "central to the objective of the prohibition against successive trials."Burks, 437 U.S. at 11, 98 S.Ct. at 2147. A core value of the Double Jeopardy Clause is expressed by the statement that the State should not be allowed to "hon[e] its trial strategies and perfect its evidence through successive attempts at conviction." Tibbs v. Florida,457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982).
Moreover, the prosecutor in the instant case, unlike the prosecutor in Lockhart, was apprised of the appellant's objection to Ms. Ryan's testimony, and, having been informed of the specific grounds of the objection, had every opportunity to shore up his proof at the first trial. He failed to do that. Had the trial court excluded Ryan's testimony (which we now know was the State's only evidence with regard to identity), we now know that the "situation that would have been obtained" is that the trial court would have granted the appellant's motion for judgment of acquittal.
The policy considerations in this case are also profoundly different from those in Lockhart. (1) The defendant's failure to object in Lockhart effectively denied the State the opportunity to shore up its case, whereas this appellant's objection clearly informed the State and the trial court of the bases for his claim that the identification should have been suppressed. Giving the State another chance to meet its burden in the instant case was nothing less than *Page 380 
providing it with an "opportunity to supply evidence that it failed to muster in the first proceeding," the very practice which was condemned by Burks, 437 U.S. at 11,98 S.Ct. at 2147. (2) The potential harm that the Double Jeopardy Clause was designed to prevent was not realized in Lockhart;
here, it was. (3) Returning the parties to the status quo post exclusion of the inadmissible evidence would have resulted in the same outcome for the defendant in Lockhart
(habitual offender sentencing based on four prior convictions), but would have produced a drastically different outcome here (the trial court's granting a motion for judgment of acquittal based on insufficiency of the evidence rather than the jury's returning a verdict of guilt).
In order to return the appellant to the situation that would have occurred had the trial court correctly suppressed the in-court identification at the first trial, we must reverse the appellant's conviction and render judgment of acquittal in her favor.
 II. FUNDAMENTAL FAIRNESS
Our decision in Hull did not hinge solely on the fact that the prosecutor failed to introduce evidence regarding three of the five Neil v. Biggers factors. We also expressed concern "that Ryan's testimony regarding the pre-trial identification process differed profoundly and on a number of significant points (e.g., the composition of the photographic spread which was viewed and the time which elapsed between the robbery and the photographic identification) from the testimony of [the investigating officer]." Hull, 581 So.2d at 1207. Our concern is heightened on this appeal due to the fact that some of Ryan's testimony at the second trial directly contradicts her testimony at the first trial. For example, at the first trial, Ryan was positive that she identified the appellant's photograph "a week and a half to two weeks after the robbery" and that "she was not at any time shown a spread consisting of 'one colored [photograph] and four black and whites or anything like that.' " Id. at 1204. However, at the second trial, she testified that her identification of the appellant's photograph "could have been a year-and-a half or two years" after the robbery, but that it could not have been "two weeks" after. R. 271. She also stated that she thought the photographic array from which she identified the appellant's picture was a "mixture" of color and black and white photographs. R. 269.
The prosecutor admitted that he reviewed our opinion inHull with Ryan prior to the second trial. R. 74. We have no quarrel with prosecutors preparing their witnesses for trial — in fact, we consider that a matter of sound trial preparation. However, the preparation of Ms. Ryan should have been undertaken before the first trial, not after the conviction was reversed because the prosecution failed to establish that Ryan's in-court identification was reliable. More importantly, the implications that arise from this record are, at best, that Ryan's testimony was "modified" based on our opinion in Hull and, at worst, that perjury was solicited and committed. We assume that the prosecutor's action in reviewing with Ms. Ryan the deficiencies in her testimony as indicated by the opinion of this Court was undertaken in good faith. Indeed, there is no evidence to the contrary. However, that action in this case leaves the impression of impropriety and undermines confidence and the appearance of fairness and confidence in the judicial system.
Besides the distinctions between this case and Lockhartv. Nelson, which we have just discussed, our conclusion that the due process principle of fundamental fairness dictates that the State should not have been entitled to relitigate the identification issue is also based, in part, on the policy and purpose underlying Rule 15.7, A.R.Crim.P. Rule 15.7 concerns pre-trial appeals by the State and provides, in pertinent part:
 "(a) GENERALLY. An appeal may be taken by the state in a felony case to the Court of Criminal Appeals from a pre-trial order of the circuit court (1) suppressing a confession or admission or other evidence. . . . Such an appeal may be taken only if the district attorney certifies to the Court of Criminal Appeals *Page 381 
that the appeal is not brought for the purpose of delay and that the order, if not reversed on appeal, will be fatal to the prosecution of the charge.
". . . .
 "(h) EFFECT OF RULING IN PRETRIAL APPEAL. If the trial court's ruling is upheld following a pre-trial appeal taken pursuant to this rule, then that affirmance shall operate as a bar to any further prosecution of the defendant . . . as to whom the appeal was taken for any crime involved in the charge or charges as to which the appeal was taken, unless the trial court shall find that the subsequent prosecution is primarily based upon significant new evidence not reasonably available to the state when the pre-trial appeal was taken."
The purpose for the adoption of a rule similar to Rule 15.7 is stated in 3 W. LaFave J. Israel, CriminalProcedure § 26.3(b) (1984):
 "If [the prosecution] is not allowed an immediate appeal from an adverse interlocutory ruling, there will be no opportunity for later appellate review. An erroneous interlocutory ruling may result in the prosecution losing its case at trial, but the acquittal of the defendant will end the matter since the double jeopardy prohibition then bars further prosecution. . . .
 ". . . [T]he practical effect of the granting of a suppression motion often is comparable to the dismissal of an indictment since the suppression order frequently will eliminate the heart of the prosecution's case. Consistent with this justification for review, many jurisdictions limit prosecution appeals from suppression orders to cases in which the suppressed evidence is shown to be critical to the prosecution's case. . . . The federal statute and several state provisions require certification that '. . . the [suppressed] evidence is a substantial proof of a fact material in the proceeding.' "
3 LaFave at 213-14.
Rule 15.7 recognizes that there are some evidentiary matters so crucial to the State's case that an adverse ruling on admissibility of the evidence would foreclose the prosecution altogether. The fact that the federal courts and most of the state courts operate under a provision similar to Rule 15.7, see 3 LaFave at 214, indicates universal acceptance of the proposition that the "incorrect receipt or rejection of evidence" is very often not just a matter of "ordinary trial error," as the Lockhart Court assumed.
Sometimes the "incorrect receipt or rejection of evidence" goes to the very heart of the State's case and can be "fatal to the prosecution of the charge." Rule 15.7(a), A.R.Crim.P. In those instances, the prosecution may appeal an adverse evidentiary ruling. However, if that adverse ruling is affirmed on appeal, further prosecution is barred "unless the trial court shall find that the subsequent prosecution is primarily based upon significant new evidence not reasonably available to the state when the pre-trial appeal was taken." Rule 15.7(h), A.R.Crim.P. See State v. Gaston, 512 So.2d 799, 801-02
(Ala.Cr.App. 1987). Further prosecution is barred, therefore, unless the State has newly discovered, not merelynew, evidence. Compare Ex parte Heaton,542 So.2d 931, 934 (Ala. 1989) (evidence that was known at the time of the original trial is not "newly discovered").
If, by procedural rule, the State is barred from pursuing a prosecution after an unsuccessful Rule 15.7 appeal unless it has newly discovered evidence, it should — as a matter of fundamental fairness — be barred from relitigating a similarly "fatal" issue after the defendant has successfully appealed, unless it has newly discovered evidence. See United States v. Shotwell Mfg. Co., 355 U.S. 233,78 S.Ct. 245, 2 L.Ed.2d 234 (1957).
Here Ms. Ryan's testimony would have qualified as the subject of a Rule 15.7 appeal because it was the heart of the prosecution's case. If the trial court had ruled against the State in a pre-trial order suppressing Ryan's testimony, the State had appealed, and this court had affirmed the suppression order, the prosecution would have been precluded not only from *Page 382 
relitigating the admissibility of the evidence, but also from prosecuting the appellant at all, unless it could establish that it had newly discovered evidence. While the evidence presented at the appellant's second trial was newly elicited, it was not newly discovered. Fundamental fairness dictates that the State should not have been allowed to take a second bite of the apple.
Based on the application of principles of double jeopardy, fundamental fairness, and the decision of the Alabama Supreme Court in Ex parte Hergott, the judgment of conviction is reversed. The circuit court is directed to enter judgment of acquittal in favor of the appellant.
REVERSED AND RENDERED.
PATTERSON, P.J., and TAYLOR and McMILLAN, JJ., concur.
MONTIEL, J., dissents without opinion.
[1] References to the record of the first trial will be designated throughout this opinion as "R. ___ (CR 89-66)." References to the record of the trial from which the present appeal is taken will be designated as "R. ___." While the record from CR 89-66 is not a part of the record in the present appeal, this Court may take judicial notice of its own records in this situation. See Wadsworth v. State,507 So.2d 572, 573 (Ala.Cr.App. 1987).
[2] Even before Lockhart, the Alabama Supreme Court had reached the same result in Zinn v. State,527 So.2d 148 (Ala. 1988). There, the court held that a reversal due to the erroneous receipt of inadmissible evidence (a computer printout showing revocation of the accused's driver's license) did not bar retrial, even if the remaining evidence was insufficient to support the conviction. The court inZinn, however, did not reach the issue presented here: whether the State was precluded from relitigating an ultimate fact established by inadmissible evidence at the first trial.
[3] The assistant district attorney representing the State at the 1991 trial was not the same assistant district attorney who tried the case in 1989.
[4] But see the prior case of Shula v. State,465 So.2d 448 (Ala.Cr.App. 1984), wherein this Court held that the State never proved that the defendant waived his constitutional rights before making a custodial confession and remanded the cause for an evidentiary hearing on that issue. The Alabama Supreme Court reversed and, without any consideration of jeopardy, held:
 "In the present case, the state did not meet its burden of showing that Shula made a knowing, voluntary and intelligent waiver of his Miranda rights. A post-conviction evidentiary hearing will not remedy the situation, however. Since the jury which convicted Shula was entitled to hear evidence concerning the circumstances in which the confession was obtained, as bearing on voluntariness, which could then be used to weigh the credibility of the confession, a post-conviction evidentiary hearing is inadequate. This is so because the convicting jury will not have heard the evidence presented at the hearing. The proper remedy is a new trial in which the jury hears the evidence as to the voluntariness of the confession."
Ex parte Shula, 465 So.2d 452, 455 (Ala. 1985).
[5] A contrary result was reached in People v.Mattson, 50 Cal.3d 826, 268 Cal.Rptr. 802, 808,789 P.2d 983, 999, cert. denied, ___ U.S. ___, 111 S.Ct. 591,112 L.Ed.2d 595 (1990). In that case the defendant's first conviction was reversed because the admission of his confessions violated the rule of Edwards v. Arizona,451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (accused interrogated after invoking his right to silence and to counsel). On retrial, the State was
 "permitted to relitigate the admissibility of confessions at the second trial, and introduced evidence, which had not been presented at the first trial, that the defendant initiated the interviews at which he confessed. The court overruled defendant's objection that the issue could not be relitigated, and that no new evidence on the issue could be considered. The confessions were admitted."
People v. Mattson, 50 Cal.3d at 849, 268 Cal.Rptr. at 818, 789 P.2d at 999. The defendant argued that relitigation of the admissibility of his confessions was precluded by the doctrine of the "law of the case," and by "equitable estoppel principles." Responding to the "law of the case" claim, the California Supreme Court held:
 "We find no merit in these claims. A reversal of a judgment without directions is an order for a new trial. 'An unqualified reversal remands the cause for new trial and places the parties in the trial court in the same position as if the cause had never been tried.' 'The granting of a new trial places the parties in the same position as if no trial had been had. . . .'
 "That status even permits amendment of the accusatory pleading, as well as renewal and reconsideration of pretrial motions and objections to the admission of evidence. Absent a statutory provision precluding relitigation, a stipulation by the parties, or an order by the court that prior rulings made in the prior trial will be binding at the new trial, objections must be made to the admission of evidence, and the court must consider the admissibility of that evidence at the time it is offered. . . .
 "Defendant's claim that our determination that his confession should have been excluded at the first trial constitutes the 'law of the case' lacks merit. The law-of-the-case doctrine binds the trial court as to the law but controls the outcome only if the evidence on retrial or rehearing is substantially the same as that upon which the appellate ruling was based. The law-of-the-case doctrine applied to this court's prior ruling only insofar as we held that California law governed the admissibility of the confessions. The trial court did not depart from that ruling in its determination, based on new evidence, that the confessions were admissible."
People v. Mattson, 50 Cal.3d at 849-50, 268 Cal.Rptr. at 818, 789 P.2d at 999 (footnote and citations to California authority omitted). The court continued:
 "[T]he law-of-the-case doctrine did not compel the trial court to exclude defendant's confessions. Except where insufficiency of the evidence to sustain a judgment of conviction was the basis for reversal, in which case double jeopardy considerations preclude relitigation (see Burks v. United States (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1), the law-of-the-case doctrine is inapplicable to the determination of questions of fact decided on the basis of new or different evidence in a new trial following reversal on appeal."
People v. Mattson, 50 Cal.3d at 852-53, 268 Cal.Rptr. at 820, 789 P.2d at 1001. See also 5B C.J.S. Appeal andError § 1964(d) at 572 (1958) ("[A] decision by an appellate court of a question involving, turning on, or dependent on, a matter of fact is not the law of the case on a subsequent trial of the same cause where materially different facts . . . are shown in evidence").
[6] The Lockhart court noted that the governor's pardon of Nelson's conviction "vitiated its legal effect, but it did not deprive the certified copy of that conviction of its probative value under the Statute." 488 U.S. at 40,109 S.Ct. at 291. The same observation cannot be made about the evidence held inadmissible on the first appeal of the present case. The very purpose of proving that an in-court identification that has been tainted by a suggestive pre-trial identification is nevertheless reliable is to endow it with a probative value that it does not otherwise possess. Identification evidence that has not been proven reliable is obviously "deprive[d] . . . of its probative value."